**UNITED STATES of America, Appellee,**

v.

**Raul LUCIANO, also known as Roline, also known as Raul Luciano; Richard Rodriguez; Armando Luciano, also known as Mando; Angel Santiago, also known as Chino; Edward Parrett; Harry Rodriguez; Victor Cochran, also known as Fat Vic; Enrico Maturo; Josue Santana, also known as Chepo, also known as Joshua Santana; Edgardo Carmona; Efran Rodriguez; Ronald Fassett; Charles Fassett; Anthony Cesario; Jesus Cepeda; Elizabeth Rodriguez; Gary Vaspasiano, and William Tienken, Jr., Defendants,**

**Juan Cintron, Defendant–Appellant,**

**Frank Michael Parise, Defendant–Appellant.**

**Nos. 131, 132, Docket Nos. 97–1221, 97–1466.**

United States Court of Appeals, Second Circuit.

Argued Sept. 10, 1998.

Decided Oct. 15, 1998.

Bettina Schein, New York, NY (Bruce Cutler, on the brief) for Defendant–Appellant Parise.

(Eileen Mc Gann, West Redding, CT) for Defendant–Appellant Cintron.

Alex V. Hernandez, Assistant United States Attorney, Bridgeport, CT (John H. Durham, United States Attorney, District of Connecticut, on the brief) for Appellee.

Before: FEINBERG, JACOBS, and SACK, Circuit Judges.

PER CURIAM:

Defendants-appellants Frank Michael Parise and Juan Cintron mount a number of challenges to their convictions and sentences. By summary order issued today, we have addressed all but one of their claims. We publish to address Parise's claim that he received ineffective assistance of counsel. The conduct of Parise's trial counsel was unprofessional, but we find that Parise suffered no prejudice within the meaning of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We therefore uphold the judgment as entered by the United States District Court for the District of Connecticut (Dorsey, *Ch.J.*).

## BACKGROUND

Parise retained private counsel to conduct his defense against narcotics charges. Parise's difficulties with his lawyer were fore-

shadowed from the very beginning of the trial. On the first day of trial, outside the presence of the jury, Parise's counsel advised the district court, "I have an ethical problem." However, after consulting with Parise, counsel said, "I think that I have resolved my problems with my client." Parise, who was of course present at trial, did not demur.

The nature of the vague "ethical problem" that concerned counsel at that time was never expressly clarified. However, immediately after announcing the problem, counsel added, apparently with respect to his pretrial access to his incarcerated client:

They don't let you visit on weekends, and let you fax ahead of time, and I was in North Carolina last week.

Moreover, Parise's affidavit in support of his motion for a new trial asserts that he had no opportunity to meet with his attorney prior to trial:

On the first day of trial, before the trial began, I told [trial counsel] that I did not want him to represent me because he had not come to meet with me in the jail where I was incarcerated to discuss the case. He was too busy with other cases in New York. I believed he was not prepared and was not familiarized with my case.

Parise now claims that, contrary to trial counsel's assertion, this "problem" was unresolved and underlay what he alleges were deficiencies in his counsel's performance throughout the trial. Parise complains that his own lawyer (i) elicited from government witnesses evidence of Parise's own prior bad acts and the fact that he had previously been in jail; (ii) questioned a defense witness about Parise's violation of supervised release and elicited testimony that at least hinted that Parise had violently assaulted his wife (as was in fact the case); and (iii) failed to call a witness who (Parise says) would have verified an innocuous version (offered by Parise and another witness) of an intercepted phone call that the Government used to argue Parise's involvement in narcotics trafficking.

The jury rendered a verdict on December 30, 1997, finding Parise guilty of three narcotics-related charges. A few weeks later, trial counsel commenced a civil lawsuit against Parise and his mother for unpaid legal fees. Trial counsel asked leave of court to withdraw from the representation on the basis of the fee dispute; the request was denied.

On February 21, 1997 (after Parise's conviction but before sentence had been imposed), counsel wrote a letter to Chief Judge Dorsey—with copies to, *inter alia*, the United States Attorney's Office and the Probation Office—renewing his request to withdraw. The contents of the letter are astonishing enough that we set them forth in full:

Dear Judge Dorsey:

I am requesting reconsideration of your decision without prejudice of February 10, 1997 on my Motion to Withdraw as Counsel for Frank M. Parise. I am also requesting a hearing thereon and have arranged for counsel, if necessary, to take my testimony and/or represent me therein.

It is my desire that Frank M. Parise neither stymies me nor the Court. I have urged him in writing to retain other counsel. He does not respond. From his bail package and the testimony of his home sales, we know he and his Mother have assets. When first retained, I requested his Mother pay the xeroxing bill for C.J.A. counsel Bruce Koffsky. Her refusal led to the Court eventually reimbursing Mr. Koffsky for services which benefited Mr. Parise in case preparation.

I suggest Mr. Parise be questioned as to whether or not he desires me to continue representing him, what efforts, if any, he has made to seek new counsel, and what assets are available from the recent sale of the home to Mrs. Baldessari's son and from other sources. CJA counsel could always be assigned and the cost billed to defendant, as the xeroxing should have been.

My continued representation of this larcenous deceitful man is like booking passage on the Titanic. When I suggested to him the change in jury response and demeanor after the introduction of the transmission detector from his car, defendant blamed his conviction on Judge Dorsey constantly "putting [trial counsel] down" as counsel which gave the jury, in his view, the idea that the Judge did not take Parise's case seriously. Now add to that my

insults, although truth is a defense, to him and his Mother and the fact that I have retained counsel to find his assets (like the court should do) and sue him, and there is thus an inherent conflict.

This is not a simple "fee dispute." This is theft. There is no disagreement over the amount owed. You will be bombarded with Habeas writs for years if you allow him to be represented at sentence by a lawyer who is litigating against him.

Having been reminded of my "professional responsibility" by U.S. Probation, I have dutifully responded to the PSI Report on the technical guideline side and even on employment history. I will not visit defendant and do not need the rise in blood pressure that would come from listening to his post-verdict lunatic allegations and from restraining myself, despite the age difference, from smacking him. Add to that the panic my wife, a previous burglary attack victim, feels having had in her home the Mother of a man whose capacity for deceit, theft, drug rip-offs, guns, assaults of women, violence are well-documented by U.S. Probation and prior testimony, who has the morality of a protozoa, and who flunked a polygraph ice cold in my presence on his involvement in a drug-related homicide involving at least one of his customers, and my request is that you Judge Dorsey, whom my wife so respects,[1] please assure her she has nothing to fear.

I will comply with my responsibility but I also have a responsibility to my family and to myself. I cannot stand up in court and say one positive thing on sentence, outside of guideline calculations and statutory minimum observations. Parise deserves fair, effective representation at sentence which I cannot provide.

I am not happy writing this letter, but I am dealing with a non-responsive, dishonest client whom I cannot defend.

Respectfully,

/s/

Lawrence M. Herrmann

Parise eventually replaced trial counsel. Shortly after retaining new counsel, he made a motion for a new trial on the ground that trial counsel had been ineffective (1) pre-trial, by failing to meet with him and by permitting him to be subjected to a polygraph under adverse conditions; (2) during trial, by eliciting evidence of his prior bad acts and failing to call a favorable witness; and (3) post-trial, by submitting the quoted letter, which Parise's new counsel construes as a thinly veiled recommendation that the judge impose the maximum sentence.

Judge Dorsey denied the motion (and an accompanying motion to recuse), stating that in his view the pre-trial and trial conduct ascribed to counsel reflected strategic and tactical decisions; for example, many of the prior bad acts elicited involved occasions when Parise had double-crossed the testifying witness. The evidence therefore had bearing on that witness's bias and motive to testify against Parise. Moreover, the judge indicated that, like counsel, he had believed up until the very end of the trial that Parise might testify, and that counsel therefore had a sound tactical reason for bringing out prior misconduct. Finally, the district court indicated that it would sentence Parise without regard to the information contained in the February 21 letter.

At sentencing, Parise's new counsel rigorously contested the quantity of drugs ascribed to Parise under the Guidelines. However, counsel did not contest the fact that Parise was subject to a 20–year statutory mandatory minimum sentence under 21 U.S.C. §§ 841 and 851:

> THE COURT: All right. Is there any question about the guideline calculation being in effect subject to the mandatory minimum and the mandatory minimum being the statutes that [the Assistant United States Attorney] referred to earlier? I'm talking about as a general matter.

---

1. We note: counsel had served as an assistant United States Attorney at a time when Chief Judge Dorsey was United States Attorney for the District of Connecticut.

[PARISE'S SENTENCING COUNSEL]: Your Honor, as a general proposition, no. We do not[.]

THE COURT: Now, the prior conviction on which the second offender implication is involved, is there any question about that?

[COUNSEL]: No, Your Honor.

The district court thereafter sentenced Parise to the statutory minimum of 240 months, followed by ten years' supervised release, and a fine of $12,500 (which represented a downward departure from the Guidelines fine of $17,500). The court was also simultaneously sentencing Parise on a supervised release violation; on that offense, the court downwardly departed to sentence Parise to an 18–month term to run concurrently with the 240–month sentence.

## DISCUSSION

■ To demonstrate ineffective assistance of counsel, Parise must satisfy a two-part test. First, he must show that his counsel's performance "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064. Second, Parise must show that there is a reasonable probability that but for counsel's error, the outcome of the proceeding in which the constitutionally deficient representation occurred would have been different. *See id.* at 694, 104 S.Ct. at 2068. We are troubled by the conduct of Parise's trial counsel, but we do not believe that the failure of representation meets the *Strickland* test.

■ First, the "ethical problem" raised at the outset of trial apparently related to trial counsel's failure to visit Parise in jail before the trial began. Whatever it was, Parise waived any complaint on this score by remaining silent while his counsel advised the court that the difficulty had been resolved, and by allowing counsel to proceed with the trial. Under the circumstances, the district court was under no duty to inquire further.

■ As to counsel's conduct of the trial itself, we conclude that counsel's choices were within the range of acceptable strategic and tactical alternatives and did not cause the representation to fall below the constitutionally acceptable level mandated by *Strickland.* The decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess. *See, e.g., Trapnell v. United States,* 725 F.2d 149, 155 (2d Cir.1983); *United States ex rel. Walker v. Henderson,* 492 F.2d 1311, 1314 (2d Cir.1974). Here, the witness Parise asserts should have been called would have testified in a manner corroborative of another witness; counsel might well have regarded the testimony as unnecessarily cumulative. Similarly, the conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken. *See United States v. Eisen,* 974 F.2d 246, 265 (2d Cir.1992) (no ineffective assistance despite defendant's claim that lawyer had failed to thoroughly impeach prosecution witnesses because decisions as to nature and extent of cross-examination are strategic); *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987) ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature" and will not support an ineffective assistance claim). It is good practice for defense counsel to inquire into a witness's bias or motive to testify on cross-examination; such inquiries do not support a finding of prejudice under *Strickland. See United States v. O'Neil,* 118 F.3d 65, 73 (2d Cir.1997) (citing *Routly v. Singletary,* 33 F.3d 1279, 1289 (11th Cir.1994)), *cert. denied sub nom. Saia v. United States,* —— U.S. ——, 118 S.Ct. 728, 139 L.Ed.2d 666 (1998). The district court, which was in a superior position to appreciate the intricacies of the defense as it unfolded, concluded that counsel questioned witnesses about Parise's prior bad acts in order to show bias and motive to testify, as well as to defuse any potential impeachment in the event Parise testified (still a live option at the time counsel posed the challenged questions). The court further concluded that Parise's counsel had provided zealous representation at trial and had challenged other government witnesses with great rigor. Under the circumstances, coun-

sel's conduct of the trial did not fall below the "objective standard of reasonableness" outlined in *Strickland.*

█ More troubling is the litigation between attorney and client reinforced by the entirely indefensible letter that Parise's trial counsel sent to the court before sentencing.[2] Parise argues that he has demonstrated that his counsel was laboring under such a conflict of interest that Parise must be resentenced.[3] We do not view resentencing as necessary, however.

█ The Sixth Amendment guarantees a criminal defendant conflict-free representation. A claim of ineffective assistance of counsel predicated on an alleged conflict between client and attorney falls into one of two categories: a per se violation of the Sixth Amendment, *see Bellamy v. Cogdell,* 974 F.2d 302, 306 (2d Cir.1992) (*en banc* ); *United States v. Cancilla,* 725 F.2d 867, 870 (2d Cir.1984); or a conflict that does not rise to the level of a per se violation but may nonetheless jeopardize the representation, *see Strouse v. Leonardo,* 928 F.2d 548, 552 (2d Cir.1991). A defendant who establishes a per se violation need make no further showing in order to obtain relief. *See United States v. Novak,* 903 F.2d 883, 886 (2d Cir. 1990). We have only found two species of per se violations: "(1) where the attorney was not licensed to practice law because he failed to satisfy the substantive requirements of admission to the bar, and (2) where the attorney was implicated in the defendant's crime." *O'Neil,* 118 F.3d at 71; *see Bellamy,* 974 F.2d at 306. We are reluctant to expand those categories except in the most egregious circumstances. *See Tippins v. Walker,* 77 F.3d 682, 686 (2d Cir.1996). Parise's claim must therefore be analyzed under the second category.

█ To prevail on a claim other than a per se violation, Parise must establish an actual conflict of interest that resulted in a "lapse of representation." *United States v. Stantini,* 85 F.3d 9, 16 (2d Cir.) (quotation

omitted), *cert. denied sub nom. Bisaccia v. United States,* —— U.S. ——, 117 S.Ct. 498, 136 L.Ed.2d 390 (1996); *see also Winkler v. Keane,* 7 F.3d 304, 308, 310 (2d Cir.1993) (contingent fee in criminal case held to create an actual conflict of interest but no proof was shown that representation was adversely affected).

█ We have held that the existence of a fee dispute between attorney and client, or a civil suit, or a motion to withdraw on that basis, without more, does not create the divergence of interests that defines an actual conflict. *See O'Neil,* 118 F.3d at 71–72. Here, however, we are convinced that the counsel's letter to the court easily supplies the distinguishing "something more." We assume that Parise has demonstrated an actual conflict of interest.

█ Parise's demonstration of an actual conflict and a lapse in representation results in a presumption that his sentencing was prejudiced. *See United States v. Fulton,* 5 F.3d 605, 609 (2d Cir.1993). We have never held, however, that this presumption is irrebuttable, and in the circumstances of this case, it has been rebutted.

First, Parise had replaced his conflicted counsel with new counsel who rigorously protected his interests at sentencing and argued strenuously the fundamental unfairness of the district court's placing any reliance on the letter that we find so troubling. See *United States v. Pascarella,* 84 F.3d 61, 67 (2d Cir.1996) (holding that any conflict of interest that undermined effective representation was eliminated by the substitution of new counsel before trial began).

More critically, Parise was subject to a mandatory statutory minimum as a repeat offender and, in fact, that was the sentence he received. Were we to remand for resentencing, Parise could receive no lesser sentence of incarceration. Because the district court lacked discretion to sentence Parise to any lesser period of jail time, the outcome of the proceeding in which the constitutionally

---

2. Also troubling is the fact that the Government has utterly failed to address this letter—by far the most egregious instance of ineffective assistance claimed by Parise—in any way in its brief.

3. Because these events post-dated the trial, Parise cannot argue that they affected his representation at trial. They did take place, however, before sentencing.

deficient representation occurred could not possibly have been any different. The district court did depart downward to order the payment of a lower fine than the Guidelines mandated and to sentence Parise to a concurrent, rather than consecutive, term on the supervised release violation. We need not decide whether these downward departures were warranted; it is enough that they overcome the presumption of prejudice by demonstrating that Parise's sentencing was in no way adversely affected by the letter his former counsel submitted.

## CONCLUSION

Notwithstanding counsel's behavior, Parise has not demonstrated that he received ineffective assistance of counsel. Therefore, the judgment is affirmed.