Titus STEPHENS, Petitioner,

v.

Joseph COSTELLO, Superintendent,
Midstate Correctional Facility,
Respondent.

No. 96–CV–6218Fe.

United States District Court,
W.D. New York.

April 29, 1999.

Titus Stephens, Hale Creek ASATCA, Johnstown, NY, pro se.

Mary H. Doyle, New York State Attorney General's Office, Department of Law, Rochester, NY, for Joseph Costello, Superintendent respondent.

## DECISION AND ORDER

FELDMAN, United States Magistrate Judge.

### Preliminary Statement

Petitioner Titus Stephens (hereinafter "Stephens"), proceeding *pro se,* petitions

this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this matter by the undersigned. For the reasons set forth below, Stephens' petition for a writ of habeas corpus is **denied.**

### *Factual Background*

On August 10, 1993, following a jury trial in Ontario County Court, Stephens was found guilty of Criminal Sale of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Fifth Degree. The charges against Stephens arose from his September 2, 1992 sale of a quantity of crack cocaine to Wayne County Deputy Sheriff Russell Stein who, at the time of the sale, was acting in an undercover capacity. The drug transaction was conducted in the presence of a police informer (Linda Manino) and surveilled by another deputy sheriff (John Storer). The drug sale was also recorded on audio tape.

On September 1, 1993, Stephens was sentenced to a term of imprisonment of six to eighteen years by Ontario County Court Judge James M. Harvey. On that same day Stephens also entered a guilty plea to two other narcotic related indictments. As to each of these indictments, Stephens was sentenced to two independent terms of imprisonment of one to three years. Judge Harvey ordered each term of imprisonment to be served consecutively. Thus, Stephens total sentence for all three convictions was a term of imprisonment of eight to twenty-four years of incarceration. Stephens is currently serving his sentences.

The Fourth Department of the Appellate Division affirmed Stephens' conviction on direct appeal, *People v. Stephens*, 219 A.D.2d 854, 632 N.Y.S.2d 906 (4th Dep't 1995), and thereafter the New York Court of Appeals denied him leave to appeal, *People v. Stephens*, 87 N.Y.2d 851, 638 N.Y.S.2d 610, 661 N.E.2d 1392 (1995). Stephens also filed a motion pursuant Article 440 of New York's Criminal Procedure Law seeking to vacate his convictions on the basis of prosecutorial and police misconduct. Judge Harvey denied the Article 440 motion on August 11, 1995. On October 30, 1995, the Hon. Reuben K. Davis, Associate Justice of the Appellate Division, Fourth Department, denied Stephens' application for leave to appeal the denial of his Article 440 motion.

In his habeas petition, Stephens alleges five grounds for relief. First, Stephens alleges prosecutorial misconduct involving the failure to disclose exculpatory evidence regarding police informant Linda Manino. Second, Stephens alleges that the prosecutor used false and perjured evidence at trial. Third, Stephens claims that the prosecutor improperly withheld discovery regarding scientific test results. Fourth, Stephens claims his sentence was excessive. Finally, Stephens claims his Sixth Amendment right to counsel was violated when the trial judge refused his lawyer's request to be relieved as his attorney. Stephens appears to have exhausted his state court remedies as to all of the issues presented in his petition and therefore, this Court will consider the merits of his claims.

### *Discussion*

*1. Exculpatory Evidence Regarding Linda Manino:* Stephens alleges that the prosecutor violated his due process rights by failing to disclose that prosecution witness Linda Manino had been given a "deal" to have three pending drug charges "dismissed in exchange for false testimony" at his trial. *See* Habeas Petition at page 10, Docket # 1. Stephens first made this allegation regarding Manino in his Article 440 motion to the trial judge seeking to vacate his conviction. In support of his 440 motion, Stephens submitted an undated transcript of an alleged conversation between Manino and Charles Jones in which Manino claims that police intimidation and threats regarding pending drug sale charges caused her to lie at Stephens' trial. In response to the Article 440 mo-

tion, the prosecutor submitted an affidavit averring that Manino had no drug charges pending against her at the time she was cooperating with the police and he attached a copy of her criminal record to confirm his representations. The prosecutor also pointed out in his affidavit that Manino testified at trial that one of the reasons she cooperated with the police was to gain favorable treatment with respect to a pending petit larceny charge. *See* Affidavit of R. Michael Tantillo dated March 15, 1995, annexed as exhibit "O" to Respondent's Appendix.[1]

 The prosecution's constitutional duty to disclose material evidence favorable to the defense applies not only to exculpatory evidence, but also to evidence that could be used to impeach prosecution witnesses. *Giglio v. United States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Only material evidence is constitutionally required to be disclosed. Evidence is material "if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley,* 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). A "reasonable probability" of a different result is shown when the evidence suppressed "undermines confidence in the outcome of the trial." *Id.* Impeachment evidence may be considered material where the witness in question supplied the only evidence linking the defendant to the crime. *United States v. Avellino,* 136 F.3d 249, 257 (2d Cir.1998).

 Based on the foregoing, even assuming arguendo that Stephens' allegations are true,[2] the Manino impeachment evidence is not sufficiently material so as to require habeas corpus relief. Although Manino was a prosecution witness who helped police set up the drug transaction for which Stephens was found guilty at trial, there was other powerful evidence linking Stephens to the September 2, 1992 drug trafficking offense. Indeed, Stephens was found guilty of selling crack cocaine directly to Russell Stein, a Wayne County Sheriff Deputy who was acting in an undercover capacity at the time of the sale. Moreover, this "hand to hand" buy was recorded by Stein through use of a "body wire" and the resulting tape recording was identified by Stein and introduced as direct evidence against Stephens at his trial. The strength of this independent evidence of Stephens' guilt "increases the degree of significance that would need to be ascribed to the withheld impeachment evidence in order for it reasonably to undermine confidence in the verdict." *United States v. Orena,* 145 F.3d 551, 559 (2d Cir.1998). In light of the overwhelming independent evidence of Stephens' guilt, I find that there does not exist a "reasonable probability" of a different outcome in the trial had the Manino impeachment evidence been revealed. Accordingly, Stephens is not entitled to habeas corpus relief on this ground.

2. *Use of False Evidence:* Stephens' second claim is that the prosecutor "introduced a fabricate (sic) tape recorded conversation and transcript to the jury." Habeas Corpus Petition at page 12. Stephens offers no substantive factual support for this claim and the Court is unable to find any support in the record. There being no apparent legal or factual basis for this allegation, Stephens is not

---

1. The trial transcript confirms that Manino testified on both direct and cross examination about her criminal history, including petit larceny charges. On cross examination, Manino admitted that she was a drug user who was trying to "work off" the pending larceny charges by cooperating with the police in their investigation of Stephens.

2. Although not raised by the Respondent, there is evidence in the record that Stephens was well aware of Jones' taped conversation with Manino at the time of his trial. Indeed, on cross-examination Stephens referred to the fact that he and Jones had taped a conversation with Manino and offered to play the tape for the prosecutor. *See* Trial Transcript at pages 178–179.

entitled to habeas corpus relief on this ground.

*3. Disclosure Regarding Scientific Test Results:* Stephens' third claim is that the prosecutor failed to provide him with discovery regarding the testing and calibration of the equipment used by the chemist who tested the cocaine and testified for the prosecution. Prior to trial, defense counsel moved to compel production of such data in a pre-hearing motion pursuant to New York Criminal Procedure Law § 240.20(c). The trial court denied the motion, ruling that under *People v. Rosario* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), the prosecution was not required to release this material until trial. The Appellate Division, Fourth Department, agreed with the trial court judge and held that

> [t]he court properly denied discovery of documents and notes that formed the basis of the laboratory report concluding that the substance sold by defendant to the undercover officer was cocaine. Those documents and notes were not discoverable under article 240 of the Criminal Procedure Law. Rather, they constitute *Rosario* material and were properly made available to defendant at trial.

*People v. Stephens,* 219 A.D.2d 854, 855, 632 N.Y.S.2d 906 (4th Dep't 1995).

■ Although respondent claims the chemist's notes and supporting material were provided to defense counsel along with other *Rosario* materials, in his habeas petition Stephens asserts the prosecution "never produced" the requested documents. Given that Stephens' trial counsel never disputed on direct appeal that she was provided the chemist's documents when the prosecution turned over the rest of the *Rosario* materials, this Court views Stephens' claim that the requested documents were never produced with skepticism. However, regardless of whether the prosecutor turned over *Rosario* materials, Stephens' habeas petition must fail on this ground. "On a petition for a writ of federal habeas corpus, the petitioner bears the burden of proving by a preponderance of the evidence that his *constitutional* rights have been violated." *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997) (emphasis supplied). "Any error under *Rosario* at trial would be a violation of *state law,* and, thus, not subject to review under a petition for a writ of habeas corpus." *Morrison v. McClellan,* 903 F.Supp. 428, 429 (E.D.N.Y. 1995) (emphasis supplied). *See also Green v. Artuz,* 990 F.Supp. 267, 274 (S.D.N.Y. 1998) ("[F]ailure to turn over *Rosario* material is not a basis for habeas relief as the *Rosario* rule is purely one of a state law").

■ *4. Excessive Sentence:* Citing his strong family ties, employment history and lack of a felony criminal record, Stephens contends that his sentence of incarceration was so excessive as to constitute cruel and unusual punishment in violation of the Eighth Amendment. While Stephens may believe his sentence was unduly harsh, as a matter of federal constitutional law, his claim for habeas relief is without merit. Stephens was found guilty after trial of the crime of Criminal Sale of a Controlled Substance (CSCS) in the Third Degree, a class "B" felony as defined in § 220.39 of New York's Penal Law and punishable by a maximum term of imprisonment of 8 ⅓ to 25 years. N.Y.Penal Law §§ 70.00(2)(b) and (3)(b) (McKinney 1998). Stephens subsequently entered pleas of guilty to criminal charges in two other indictments (Indictment Numbers 92–10–249 and 92–10–250), the most serious charge in each indictment again being the class "B" felony of CSCS in the Third Degree. Stephens' *combined* sentence for the offenses of conviction in all three indictments was 8 to 24 years imprisonment, substantially less than the maximum punishment he could have faced. Based on the foregoing, there is no merit to Stephens' claim that his sentence violated the Eighth Amendment. "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.

1992). *See also Charris v. Artuz*, 32 F.Supp.2d 139, 144 (S.D.N.Y.1998).

*5. Failure to Substitute Counsel:* On November 12, 1992, the trial judge, Hon. James R. Harvey, appointed Christine M. Cook, Esq. (hereinafter "Cook") to represent Stephens. Thereafter, the record reveals that Cook engaged in appropriate pretrial practice, including the filing of discovery demands and motions to suppress evidence, and prepared the case for trial. Stephens' trial was initially scheduled to commence on July 6, 1993. On that date, Cook informed Judge Harvey that Stephens had rejected the prosecution's final plea offer and "would like to remain with a plea of not guilty and go to trial." (July 6, 1993 Transcript at page 2). When asked if she was ready for trial, Cook responded that she was "perfectly willing to try the case" but Stephens wanted to seek new counsel because "he doesn't want to work with me on the trial." *Id.* No further explanation or justification was offered to the trial court by either Cook or Stephens. The following exchange then ensued between Cook and the Court:

> The Court: Were you assigned to represent this defendant?
>
> Ms. Cook: Yes, I was, your honor.
>
> The Court: Your assignment continues. On the eve of trial, to have you relieved, is denied.

*Id.* at pages 2–3. Cook thereafter sought a delay of the trial based upon her personal health situation, advising the Court that her doctor "asked me to continue working half days for at least another week." Judge Harvey granted Cook's application to postpone the trial and ordered jury selection to commence on August 9, 1993 at 9:30 a.m.

Between July 6, 1993 and August 9, 1993, neither Stephens or Cook contacted the trial judge to advise him that there was any problem with starting the trial on the scheduled date. On the morning of August 9, 1993, Cook filed with the Court and served opposing counsel with an affirmation seeking to be relieved as trial counsel, to have substitute counsel appointed to represent Stephens and to postpone the trial so that new counsel would have time to prepare. In her affirmation, Cook detailed the reasons for her request. According to Cook, after the July 6, 1993 appearance, she advised Stephens that if he wanted new counsel he should make arrangements to retain someone as soon as possible, but that "we must continue to prepare for trial in the meantime." *See* Affirmation of Christine M. Cook, Esq. at ¶ 15. Cook's affirmation also stated that despite her efforts to prepare for trial, Stephens refused to cooperate with her, failed to return her phone calls and repeatedly missed scheduled appointments with her. According to Cook, Stephens' refusal to meet with her to prepare for trial had caused an "irreparable breakdown in communication" and prevented her from preparing an adequate defense for trial. *Id.* at 24–25.

When Stephens and counsel appeared before Judge Harvey to commence trial, Cook was permitted to elaborate on her written application to be relieved as trial counsel. Cook stated that her client "referred to [her] with words that [she] would prefer not to say on the record and [said] that he might as well go to trial with the judge's wife," that there was a "irreparable breakdown in communication" between herself and her client, and that the relationship was "hostile" and "antagonistic." August 9, 1993 Transcript at page 5. Cook also indicated that she found it "impossible to work with [Stephens] in assisting in his defense and [that she was] totally unprepared for trial due to the unsuccessful attempts to prepare in the matter." *Id.* at 5–6. According to Cook, Stephens obstructed her ability to interview alibi witnesses by not allowing her to meet them in his absence and then not attending appointments so that the interviews could occur. *Id.* at 4. After allowing Cook to orally supplement her written motion, Judge Harvey summarily denied Cook's request to be relieved as follows:

THE COURT: Mr. Stephens, do you have any other attorney, sir?

STEPHENS: It is impossibilities.

THE COURT: No, answer my question. Have you hired an attorney?

STEPHENS: No, I haven't.

THE COURT: Your application is denied. Matter's ready for trial. We will be selecting a jury for trial in five minutes upstairs.

August 9, 1993 Transcript, p. 6. Based on the foregoing, the constitutional issue presented for this Court is whether the conduct of the trial judge in denying Cook's eleventh hour request to be relieved as trial counsel violated Stephens' Sixth Amendment right to counsel.

▮ In navigating Stephens' Sixth Amendment claims, the Court is directed by certain established legal guideposts. Unlike the right to counsel, the right to counsel of one's choice is not absolute. An indigent defendant has no Sixth Amendment right to have a particular attorney act as trial counsel. *United States v. Iles,* 906 F.2d 1122, 1130 (6th Cir.1990). "Because the right to counsel of one's choice is not absolute, a trial court may require a defendant to proceed to trial with counsel not of defendant's choosing; although it may not compel defendant to proceed with incompetent counsel." *United States v. Schmidt,* 105 F.3d 82, 89 (2d Cir.1997). The Supreme Court has made clear that the Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his counsel. *Morris v. Slappy,* 461 U.S. 1, 13–14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). Moreover, not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise prepare for trial violates a defendant's Sixth Amendment right to counsel. *Id.* at 11, 103 S.Ct. 1610.

▮ Nevertheless, a criminal defendant "does have the right to effective representation by appointed counsel, and this right may be endangered if the attorney-client relationship is bad enough." *United*

*States v. Graham,* 91 F.3d 213, 221 (C.A.D.C.1996). To warrant substitution of counsel, the defendant must demonstrate "good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *McKee v. Harris,* 649 F.2d 927, 931 (2d Cir.1981) (*quoting United States v. Calabro,* 467 F.2d 973, 986 (2d Cir.1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1386, 35 L.Ed.2d 587 (1973)). In determining whether adequate grounds exist to substitute counsel, trial judges are afforded broad discretion. Where the request is made on the eve of trial, a defendant can substitute new counsel only "when unusual circumstances are found to exist." *United States v. Schmidt,* 105 F.3d 82, 89 (2d Cir.1997). *See also United States v. Llanes,* 374 F.2d 712, 717 (2d Cir.1967) ("Judges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for achieving delay"); *United States v. Bentvena,* 319 F.2d 916, 936 (2d Cir.), *cert. denied,* 375 U.S. 940, 84 S.Ct. 345 , 11 L.Ed.2d 271(1963) (restraints must be put on requests for substitution of counsel lest the right be "manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice"). However, where the trial judge receives a "seemingly substantial" complaint from a defendant about his counsel, the Court has a duty to inquire into the reasons for the dissatisfaction. *McKee v. Harris,* 649 F.2d at 933. *Accord United States v. Graham,* 91 F.3d at 221; *United States v. Mullen,* 32 F.3d 891 (4th Cir. 1994); *United States v. Hart,* 557 F.2d 162, 163 (8th Cir.1977).

In his habeas petition, Stephens does not so much quarrel with the substantive legal representation Cook provided at trial, but rather the failure of Judge Harvey to conduct an adequate "inquiry about the nature of the disagreement [between Stephens and Cook] or its potential for resolution," which, Stephens alleges, violated his

Sixth Amendment right to counsel. Habeas Petition at page 14. To be sure, the trial court could have done a far better job of meeting its obligation of inquiring into the factual basis of the disagreement between Stephens and Cook. "An inquiry into the reasons for a defendant's dissatisfaction with his or her lawyer is necessary for the trial court to determine whether good cause for substitution of counsel exists." *United States v. Mullen*, 32 F.3d 891, 896 (4th Cir.1994) (conviction vacated where trial judge abused discretion in denying defendant's request to substitute counsel).

■ Notwithstanding concern over the lack of a more thorough judicial inquiry when faced with defense counsel's application to substitute new counsel for Stephens, this Court is not convinced that an error of constitutional magnitude has occurred for several reasons. First, the timing of the application to substitute counsel weighs against the finding of a Sixth Amendment violation. Cook's initial "application" to withdraw occurred on July 6, 1993, the date the trial was originally scheduled to commence. Cook indicated to Judge Harvey that she was "perfectly willing" to go to trial but that Stephens did not want "to work with her on the trial." No further explanation, clarification or justification was provided to the trial judge by either Stephens or his counsel. Indeed, despite the fact that Judge Harvey thereafter adjourned the commencement of the trial for an entire month at defense counsel's request, no additional information or formal application to substitute counsel was submitted to the trial court prior to jury selection. It was only moments before jury selection was scheduled to commence that Cook filed her motion to substitute counsel. Judge Harvey's curt approach to, and obvious annoyance with, Cook's request is far more defensible when considered in context with the timing of her application. The fact that Cook deliberately waited until moments before jury selection to inform the court of the problems she was having communicating with her client and preparing for trial is consistent with a finding that her eleventh hour application was no more than a calculated "vehicle for achieving delay." *United States v. Bentvena*, 319 F.2d at 936. *See also Jennings v. Strack*, 1994 WL 163944 at *8 (S.D.N.Y. April 25, 1994) (where application for new counsel came on the morning of trial, trial judge "reasonably concluded" that defendant was merely trying to delay proceedings).

■ Second, while it is easy to criticize the trial judge for not allowing Stephens a full opportunity to personally address the Court and explain in detail the reasons he wanted a new lawyer, the fact remains that it was *Cook's* motion to be relieved that the trial judge had to evaluate on the morning of trial. Cook had free reign to disclose in her written motion whatever "good cause" existed in support of her application. Cook's affidavit fails to reveal any legitimate reason for Stephens' to be dissatisfied with her representation or their communication breakdown. What the affidavit did reveal was Cook's concerted efforts to meet with her client and potential witnesses and Stephens' refusal, without explanation or justification, to cooperate in his own defense. The trial judge was left with facts clearly indicating that Stephens was consciously and deliberately thwarting his attorney's efforts to prepare for trial. "A court can properly refuse a request for substitution of counsel when the defendant's own behavior creates the problem." *United States v. DeTemple*, 162 F.3d 279, 289 (4th Cir.1998). Moreover, before ruling on her motion to be relieved, Judge Harvey allowed Cook the opportunity to orally expand on the basis for her request. Again, no reason for Stephens' dissatisfaction with counsel was disclosed. Cook did relate to Judge Harvey that earlier that morning she and Stephens had a "hostile and antagonistic" conversation in which Stephens told her that she "didn't even have to show up in court," but Stephens' apparent loss of confidence

in Cook is not enough to warrant substitution of counsel on the morning of trial. The defendant must demonstrate an objectively legitimate reason for his lack of confidence in appointed counsel.

> While loss of trust is certainly a factor in assessing good cause, a defendant seeking substitution of assigned counsel must nevertheless afford the court with legitimate reasons for the lack of confidence. (citations omitted). Indeed, a purely subjective standard would convert the requirement of good cause into an empty formality, since the defendant would be entitled to demand a reassignment of counsel simply on the basis of a 'breakdown in communication' *which he himself induced.*

*McKee v. Harris,* 649 F.2d at 932 (emphasis supplied). *See also United States v. Allen,* 789 F.2d 90, 93 (1st Cir.1986) (loss of trust in assigned counsel alone is not enough; the court must be provided "with a legitimate reason for his loss of confidence").

Third, even if Judge Harvey erred in not conducting a more formal and thorough inquiry with Stephens, that alone is not enough to demonstrate a Sixth Amendment violation. The Second Circuit has held that although the trial judge should make inquiry as to the reasons for a request to substitute counsel, that procedural irregularity is not a Sixth Amendment violation where the defendant cannot point to any harm that has resulted from a failure to make the required inquiry. *See McKee v. Harris,* 649 F.2d at 933 ("Where the failure to inquire causes the defendant no harm, that procedural irregularity cannot of itself be a basis for granting the writ"). Stephens points to no harm caused by the failure to inquire and none is found in the record. After Cook's request to be relieved was denied, the trial commenced. Nothing in the trial transcript reveals any "communication breakdown" between Cook and Stephens. Stephens testified at trial and presented his alibi defense. Cook's fear that she would be unable to call necessary witnesses to corroborate Stephens' alibi defense did not come to fruition as the defense presented two alibi witnesses during its case. After the trial ended and the defendant was found guilty, Cook continued to represent Stephens without objection or evidence of conflict. Indeed, when Stephens entered guilty pleas to the two additional indictments pending against him as part of a plea bargain, he expressed satisfaction with Cook's representation during the plea colloquy. The record in this case pays tribute to a finding that Cook was, in fact, ready to provide Stephens an adequate defense and her concern that their communication difficulties prevented her from preparing for trial were insubstantial. *See United States v. Allen,* 789 F.2d at 93 (where defendant's allegations that counsel was unprepared for trial were "not borne out by the record" no error in trial judge's refusal to appoint new counsel); *United States v. Young,* 482 F.2d 993, 995–996 (5th Cir.1973) (where record as a whole reflects that claim of dissatisfaction with trial counsel was insubstantial and defendant received vigorous and able representation at trial, reversal is not required); *United States v. Morrissey,* 461 F.2d 666, 669–670 (2d Cir.1972) (even though trial judge made only a "perfunctory surface inquiry" into defendant's allegations, reversal not warranted because trial record as a whole demonstrated that defendant's reasons for a change of counsel were insubstantial).

Finally, even were the Court to conclude that it was error not to grant Cook's motion to be relieved, I find such error to be harmless. The government's proof against Stephens and his alibi defense were straightforward and uncomplicated. The trial was a short one. Jury selection was completed on the morning of August 8, 1993, opening statements commenced at 1:30 p.m. that afternoon, and the guilty verdict was announced in open court at 2:30 p.m. the following day. Stephens has not claimed, either on direct

appeal, his Article 440 motion or in the instant habeas petition that Cook was incompetent or ineffective and this Court finds nothing in the trial record to support such a claim. In addition, the proof against Stephens can fairly be described as overwhelming. The State's proof included the testimony of a law enforcement officer who testified that while acting in an undercover capacity and wearing a body wire, he directly bought crack cocaine from the defendant. The audio tape recording of the transaction was introduced at trial. In sum, there simply is no evidence that Stephens was prejudiced by Cook continuing to represent him at trial or that the result would had been different had new counsel been appointed. *See United States v. Graham,* 91 F.3d at 221–222 (trial court's failure to engage defendant in colloquy regarding cause of dissatisfaction with assigned counsel before denying motion for new counsel did not prejudice defendant where assigned counsel ultimately provided effective assistance trial); *United States v. Wilks,* 46 F.3d 640, 643–644 (7th Cir.1995) (even if substitution of counsel motion should have been granted, such error would be harmless if it did not result in ineffective assistance of counsel); *United States v. Zillges,* 978 F.2d 369, 372–373 (7th Cir.1992) (if defendant was still afforded effective representation, erroneous denial of counsel substitution motion is harmless error); *Krist v. Foltz,* 804 F.2d 944, 949–950 (6th Cir.1986) (no error in denying substitution of counsel, but in any event defendant was not prejudiced by attorney's conduct of trial); *Jennings v. Strack,* 1994 WL 163944 at *8 (where trial counsel acted as "competent advocate," defendant was unable to estab-

lish prejudice from trial judge's refusal to substitute counsel).[3]

### Conclusion

For the foregoing reasons, Stephens' petition for a writ of habeas corpus is denied and the Clerk of the Court is directed to enter judgment in favor of respondent.

SO ORDERED.

---

**3.** This Court is aware that several circuits have held that once a determination has been made that the trial judge erred in failing to appoint substitute counsel prejudice is presumed and a harmless error analysis is inappropriate. *See United States v. Moore,* 159 F.3d 1154, 1158 (9th Cir.1998); *Smith v. Lockhart,* 923 F.2d 1314, 1321 (8th Cir.1991); *Wilson v. Mintzes,* 761 F.2d 275, 286 (6th Cir.1985). While the Second Circuit has not

squarely faced this issue in the context of substitution of assigned counsel, it has held that alleged conflicts between attorney and client which are "per se" violations of the Sixth Amendment are currently limited to situations where the attorney was not licensed to practice law or where the attorney was implicated in the defendant's crime. *United States v. Luciano,* 158 F.3d 655, 661 (2d Cir. 1998).