20-1560-cr
*United States v. Greene*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of May, two thousand twenty-one.

PRESENT:
> BARRINGTON D. PARKER,
> REENA RAGGI,
> SUSAN L. CARNEY,
> > *Circuit Judges.*

———————————————————————

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                No. 20-1560

DARRYL M. GREENE, AKA DOBIE,

> *Defendant-Appellant.*

———————————————————————

FOR DEFENDANT-APPELLANT:          SCOTT M. GREEN, Law Office of Scott Green, Rochester, NY.

FOR APPELLEE:          MONICA J. RICHARDS, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Vilardo, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on May 8, 2020, is **AFFIRMED**.

Darryl M. Greene appeals from a judgment of conviction entered following a jury trial at which he was found guilty of conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of a mixture and substance containing cocaine, *see* 21 U.S.C. §§ 841(a)(l), 841(b)(l)(B), 846 ("Count 1"), and two counts of attempted possession with intent to distribute cocaine, *see id.* §§ 841(a)(l), 841(b)(l)(C), 846; 18 U.S.C. § 2 ("Count 2" and "Count 3"). The District Court sentenced Greene, principally, to an aggregate 120-month term of imprisonment. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

1.  Motion for Judgment of Acquittal

Greene first challenges the District Court's denial of his Rule 29 motion for a judgment of acquittal. Rule 29 permits a trial court to set aside a jury's guilty verdict if it determines the evidence was "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a finding is warranted "only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999).[1] We review *de novo* a district court's denial of such a motion. *United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015). On such review, we conclude that Rule 29 relief was correctly denied.

Trial evidence established that, on July 24, 2017, "David Anderson" sent a package ("Box 1") by U.S. Postal Service ("USPS") from San Diego, California, to "David Hodge" at

---

[1] Unless otherwise noted, in quoting caselaw, this Order omits all alterations, citations, footnotes, and internal quotation marks.

125 Kensington Avenue, Buffalo, New York (the names identified here are as reflected on Box 1). Box 1 bore a USPS tracking number and was scheduled for delivery on July 27. On July 25, "David Anderson" sent a second package ("Box 2") by USPS from a different street address in San Diego, California, to "W. Greene" at 1631 Hertel Avenue, Buffalo, New York. Box 2 also bore a USPS tracking number and was slated for delivery on July 28.

On July 26, unindicted co-conspirator Hodge received text messages, providing tracking information for Boxes 1 and 2, and instructions regarding the place and time to pick up Box 1 in Buffalo. On July 27, Hodge made three visits to the Buffalo post office nearest his home, alone on the first two visits and accompanied by Greene on the third. At about the time of the third visit, Greene's cell phone was used to trace the tracking number for Box 1.

Meanwhile, on or about July 26, California-based postal inspectors alerted a Buffalo counterpart, Jeffrey Maul, about a "suspicious" package addressed to Hodge at 125 Kensington Avenue in Buffalo. Maul identified the package—Box 1—and, upon inspection, a trained drug-detection dog alerted to the presence of drugs. Maul requested and received a search warrant to open Box 1, which was found to contain 997.8 grams of cocaine.

Maul then prepared Box 1 for a controlled delivery, replacing the cocaine with a sham substance and placing a transmitter inside. On July 28, U.S. Postal Inspector Ray Williams, disguised as a letter carrier, delivered Box 1 to Hodge at 125 Kensington Avenue. Williams testified that Hodge stated that he "had been waiting for" the package. Joint. App'x at 127. Shortly after the delivery, Greene arrived by car at Hodge's residence and retrieved Box 1, which investigators found in his possession when they stopped him a few minutes later.

Incident to their arrest of Greene, the officers seized Box 1, two cell phones, and an identification document reflecting Greene's Buffalo residence at 1631 Hertel Avenue, the address on Box 2. The cell phones were found to contain text messages and internet search activity bearing tracking information for Boxes 1 and 2 as well as text-messages with a California phone number about using discretion in texting.

On August 3, approximately one week after Greene's arrest, USPS officials in Buffalo intercepted Box 2, which was found to contain 498.7 grams of cocaine.

Viewing this evidence in the light most favorable to the prosecution, as we are bound to do on appeal after a verdict of conviction, we easily conclude that the evidence was sufficient for the jury to find "the essential elements of the crime established beyond a reasonable doubt." *Cacace*, 796 F.3d at 191. A reasonable jury could infer that Greene conspired with Hodge and a California individual or individuals to possess with intent to distribute (Count 1) and attempt to possess with intent to distribute the cocaine contained within Boxes 1 and 2 (Counts 2 and 3).

2. <u>Motion for New Trial</u>

Greene also challenges the District Court's denial of his motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. He urges primarily that he received constitutionally ineffective assistance of counsel, which denied him a fair trial.

Rule 33 confers broad discretion on a trial court to order a new trial if needed to avert a miscarriage of justice. *See United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). We review the denial of a Rule 33 motion for abuse of discretion, assessing the factual findings in support of such a decision for clear error. *See United States v. Rigas*, 583 F.3d 108, 125 (2d Cir. 2009). A defendant may raise a claim of ineffective assistance of counsel as part of a motion for Rule 33 relief. *See United States v. Brown*, 623 F.3d 104, 113 n.5 (2d Cir. 2010). Such a claim presents a mixed question of law and fact subject to *de novo* review. *See Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011).

The District Court acted well within its discretion in rejecting Greene's Rule 33 motion because Greene cannot show that (1) counsel's performance was objectively unreasonable and (2) the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004).

*First*, insofar as Greene faults defense counsel for referencing Hodge's anticipated testimony for the prosecution in his opening, when Hodge did not, in fact, testify, we

4

identify no ineffectiveness. Counsel's opening statement was part and parcel of the defense's trial strategy to convince the jury that Hodge, not Greene, was the culpable party. This was reasonable because Hodge was the only person in Buffalo who the available evidence linked to the incriminating packages. Defense counsel introduced the idea that Hodge was the actual culprit in the opening statement and reinforced it throughout trial, including during cross-examination of the Government's witnesses and in his closing argument. This was a reasonable trial strategy, whether or not Hodge ultimately appeared at trial. Indeed, it may have been the only strategy available, in light of the strong direct evidence of Greene's participation in the crimes. *See United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) (observing that certain decisions, such as whether to give an opening statement, are ones that "fall squarely within the ambit of trial strategy, and, if reasonably made, will not constitute a basis for an ineffective assistance claim").

Further, Greene cannot demonstrate that he was prejudiced by counsel's opening remarks because, despite Hodge's absence from the trial, counsel was able through cross-examination to support the factual assertions made in his opening. Indeed, as the District Court observed, Hodge's absence may well have benefited, rather than prejudiced, Greene because counsel was able to suggest, without contradiction, that Hodge was the actual malefactor. Thus, even if counsel's opening statement had fallen below an objective standard of professional judgment—which it did not—Greene's challenge would nevertheless fail at the second *Strickland* prong, which requires prejudice.

*Second*, Greene argues that defense counsel's failure to object to certain expert opinion and hearsay testimony given by Special Agent David Turner was objectively unreasonable. In particular, Greene takes issue with Agent Turner's unobjected-to testimony regarding (1) his conclusion that Greene, Hodge, and the individual from the California number "were involved in the drug conspiracy together and that they ultimately might be relatives," Joint App'x at 147; (2) that prior to his arrest, Greene knew the tracking numbers of both parcels shipped from California; (3) that telephone contacts between Greene, Hodge, and the California number contained instructions telling Hodge where to be and at what time; (4) that the operators of the cell phones were apparently unaware of errors made by them as

5

they searched for the tracking numbers to the relevant packages; and (5) that Hodge's nickname was "Speed."

As the District Court recognized, defense counsel made "a valid strategic choice" not to object to these statements but, rather, to attack them on cross-examination. Special App'x at 13; *see also United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) ("[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken."). This was consistent with the Hodge-oriented theory of the defense case. For example, defense counsel established the lack of proof that Greene, rather than Hodge or someone else, used the phone to send the incriminating text messages. Additionally, counsel's failure to object to Agent Turner's identification of Hodge as "Speed" reinforced the defense argument that he was the actual drug dealer whose acceptance of the initial delivery was knowing and intentional while Greene's involvement was that of an innocent dupe. These were objectively reasonable strategic decisions regarding how to conduct cross-examination and forgo objection. In any event, even if any of Agent Turner's challenged statements were objectionable, the Government's evidence was sufficiently compelling in demonstrating Greene's guilt to preclude a finding of prejudice under the second *Strickland* prong as well.

*Third*, Greene identifies error in counsel's failure to avoid revelation of Greene's prior drug conviction, specifically faulting counsel for (1) failing to request redaction of Greene's videotaped post-arrest interview, during which he admitted a previous arrest "for drugs," and (2) "exacerbat[ing]" the error by referring to Greene's prior conviction during his closing statement. Appellant's Br. at 34–39.

As the District Court explained, however, defense counsel's efforts to shift blame to Hodge, while reasonable, also opened the door to evidence of Greene's prior conviction. In evidence were text messages sent from Greene's cell phone to a California phone number making reference to the sender's prior "case" to encourage the recipient to be more discreet. Joint App'x at 157; Special App'x at 11. Because defense counsel had established Hodge's prior criminal record involving drugs, the District Court acted within its discretion in

6

allowing the prosecution to offer evidence that Greene, too, had a prior drug conviction, which was done through stipulation to minimize its effect. The District Court explained that "otherwise, there would be no context for the possibility that Greene, and not Hodge, might have sent the text message referring to 'my case.'" *Id.*; *see also United States v. Gambino*, 59 F.3d 353, 368 (2d Cir. 1995). In closing, defense counsel nevertheless contrasted Greene's single prior conviction with Hodge's numerous prior arrests and convictions, consistent with the overall blame-shifting strategy. Thus, defense counsel took steps to mitigate harm flowing from a disclosure that he could not avoid given the chosen defense strategy.

As discussed above, defense counsel's attempt to shift suspicion onto Hodge was a "sound trial strategy." *Strickland*, 466 U.S. at 689. Allowing the disclosure of Hodge's prior conviction flowed from that strategy. Considering the strength of the evidence against Greene, we can identify no "reasonable probability" that omitting reference to Greene's prior conviction would have changed the verdict. *Id.* at 694.

*Finally*, Greene argues that, considered together, defense counsel's alleged errors demonstrated ineffective assistance and that the representation was so deficient *in toto* that Greene was deprived of a fair trial. As explained above, however, the errors alleged on appeal were all consistent with defense counsel's objectively reasonable trial strategy. Even if individual actions were objectionable in some respects, in light of the strong evidence against Greene, we cannot conclude that the errors (if errors they were) prejudiced the outcome of the proceedings or resulted in an unfair trial. *Id.* at 687. The District Court did not abuse its discretion in denying Greene's Rule 33 motion.

* * *

We have considered Greene's remaining arguments and find in them no basis for reversal. For the reasons set forth above, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

7