Wilson LLANOS, Petitioner,

v.

Glenn S. GOORD, Commissioner, et al., Respondents.

No. 06 Civ. 0261(RJH)(AJP).

United States District Court, S.D. New York.

May 27, 2008.

Leonard J. Levenson, New York, NY, for Petitioner.

Ashlyn Hope Dannelly, New York State Office of the Attorney General, New York, NY, for Respondents.

## OPINION AND ORDER

RICHARD J. HOLWELL, District Judge.

Petitioner Wilson Llanos ("Llanos") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his October 26, 2000 conviction for first degree assault in the Supreme Court, New York County. On July 14, 2006 Magistrate Judge Andrew J. Peck issued a Report and Recommendation ("Report") recommending that Llanos' petition be denied and that a certificate of appealability should not issue. Llanos filed timely objections to the report on August 23, 2006 ("Objection"). Having reviewed the Report, the objections and the record, the Court denies the petition, adopts the Report in its entirety, and determines that a certificate of appealability should not issue.

The basic facts of this case are ably set forth in Magistrate Judge Peck's thorough report, familiarity with which is assumed. The Court restates the facts only as they pertain to Petitioner's objections to the report.

## BACKGROUND

On July 26, 1999, Llanos got into an altercation with Alfy Jiminez ("Jiminez") because Jiminez believed that petitioner was physically abusing his sister, Elizabeth Rodriguez (who had been Petitioner's girlfriend). In the course of this altercation, Llanos stabbed Jiminez five times in his chest, face and throat. Llanos was charged with second degree attempted murder and first degree assault, but he claims he stabbed Jiminez in self-defense.

At a *Molineux* hearing held before trial, the court ruled that the People could not present evidence of specific acts of Petitioner's physical abuse of Rodriguez. Justice Atlas, the trial judge, ruled that he would allow testimony by Jiminez that the argument that led to his stabbing was about Petitioner's abuse of his sister as necessary to explain the nature, purpose and intensity of the argument. However, in his opening statement, defense counsel referred to Petitioner as "passive." As a result, the Court allowed the People to introduce the previously-excluded testimony to rebut this assertion, and called Rodriguez to testify that Llanos had hit and stabbed her. Testimony was also offered by the mother of Jiminez and Rodriguez and by a medical examiner, Dr. Barbara Sampson, as an expert regarding Jiminez' medical records. Petitioner's counsel cross-examined Dr. Sampson regarding the limited severity of Jiminez' wounds. Counsel did not inquire as to whether the medical records suggested that Jiminez was intoxicated. Petitioner chose to testify as the only witness presented in his defense.

Petitioner was found guilty of first degree assault and acquitted of second-degree attempted murder. Appellate counsel promptly moved under Criminal Procedure Law § 440.10 to vacate the conviction on the grounds that it was obtained due to ineffective assistance of counsel. Following a hearing, this motion was denied by Justice Atlas, and counsel then filed a consolidated appeal of Petitioner's conviction and the denial of the § 440 motion. This was denied by the Appellate Division, First Department, and the New York Court of Appeals denied further review.

Petitioner then filed a timely petition for a writ of habeas corpus. In his petition, Petitioner claims that his trial counsel was ineffective for (1) failing to review the victim's medical records so that he could effectively cross-examine the prosecution's medical expert, (Pet'r Pet. for Habeas Corpus 4, 6–10), (2) opening the door to testimony about Llanos' prior violent acts by describing Llanos in his opening statement as "passive," (*Id.* at 4, 11–12), (3) failing to call two defense witnesses with potentially exculpatory testimony, (*Id.* at 5, 13–15), (4) failing to request a *Ventimiglia* hearing to challenge the admissibility of evidence relating to Llanos' aunt's bribery charge, (*Id.* at 5, 15–17), and (5) failing to request a "no duty to retreat" jury instruction as part of the justification jury charge. (*Id.* at 5, 17–19). The petition was referred to Magistrate Judge Peck for a report and recommendation, which was issued on July 14, 2006.

## ANALYSIS

### I. STANDARDS OF REVIEW

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where timely objections are made, the court is required to "make a *de novo* determination of those portions of a report ... to which objection is made." *Id.; see United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.1997). If no timely objection has been made to a portion of the report, "a district court need only satisfy itself that there is no clear error on the face of the record." *Wilds v. UPS, Inc.*, 262 F.Supp.2d 163, 169 (S.D.N.Y.2003).

If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Sanchez v. Dankert*, No. 03 Civ. 2276(LTS), 2004 WL 439502, **1–2, 2004 U.S. Dist. LEXIS 3716 at *3–*4

(S.D.N.Y. Mar. 9, 2004); *accord Johnson v. City Univ. of N.Y.,* No. 00 CV 4964(WK), 2003 WL 21435469, *1, 2003 U.S. Dist. LEXIS 10615 at *2 (S.D.N.Y. June 19, 2003).

The standard of review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, as codified in 28 U.S.C. § 2254(d). Habeas petitions under Section 2254 may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (d)(2). "Clearly established federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision". *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Under AEDPA, factual determinations made by State courts are "presumed to be correct," and the habeas petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §§ 2254(e)(1); *see Miller–El v. Dretke,* 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (citing *Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)) (holding standard for rebutting presumption of correctness to be "demanding but not insatiable.")

## II.  Ineffective Assistance of Counsel

The controlling Supreme Court precedent for a claim of ineffective assistance of counsel is *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which established a two-prong test. *Id.* at 687, 104 S.Ct. 2052; *see also Apari-*

*cio v. Artuz,* 269 F.3d 78, 95 (2d Cir.2001) (holding *Strickland* to be the "relevant clearly established federal law" for AEDPA review) (internal citations and quotations omitted). To prevail on a claim of ineffective assistance of counsel under *Strickland,* "a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice." *United States v. Jones,* 455 F.3d 134, 150–51 (2d Cir.2006) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052). Under *Strickland,* there is a "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Kurti,* 427 F.3d 159, 163 (2d Cir.2005) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052); *see also Hemstreet v. Greiner,* 491 F.3d 84, 90 (2d Cir.2007). To show prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lynn v. Bliden,* 443 F.3d 238, 247 (2d Cir.2006) (citing *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. 2052).

## III.  Petitioner's objections

Petitioner objects to three parts of the Magistrate's report: (1) The determination that trial counsel was not ineffective in failing to cross-examine Jiminez regarding possible intoxication indicated in his medical records, (2) the finding that trial counsel's "blunder," allowing the People to introduce previously-excluded evidence, was not prejudicial under the *Strickland* standard, and (3) the finding that trial counsel was not ineffective in failing to call potentially exculpatory witnesses.

## A.  Medical   Records/Intoxication   of Victim

■ Petitioner specifically objects to the Magistrate's determination that the failure

of trial counsel to bring out Jiminez' blood alcohol level at the time he was hospitalized was not prejudicial, and did not amount to ineffective assistance of counsel. (Objection, ¶ 3–4). This Court reviews the Magistrate's findings regarding trial counsel's failure to cross-examine regarding the alcohol in Jiminez' bloodstream *de novo,* and reviews the remainder of the Report's findings regarding cross-examination of medical records for clear error. *Male Juvenile,* 121 F.3d at 38; *Doe v. Goord,* 2006 WL 1041130, **1–2, 2006 U.S. Dist. LEXIS 21074 at *4–*5 (S.D.N.Y. Apr. 18, 2006). The relevant state court determination is that of the First Department, which found that defense counsel's "handling of the medical evidence was competent under the circumstances of the case." *People v. Llanos,* 13 A.D.3d 76, 77, 785 N.Y.S.2d 83 (N.Y. 1st Dep't 2004).

Petitioner has failed to show that trial counsel's choice not to cross-examine Jiminez regarding intoxication fell below an objective standard of reasonableness under the circumstances. *See Strickland,* 466 U.S. at 687, 690, 104 S.Ct. 2052. The conduct of cross-examination of witnesses is generally considered to be a question of trial strategy and "as such, is virtually unchallengeable 'unless there is no … tactical justification for the course taken.'" *Harris v. Artuz,* 100 Fed.Appx. 56, 57 (2d Cir.2004) (quoting *United States v. Luciano,* 158 F.3d 655, 660 (2d Cir.1998) (per curiam)). Such strategic choices are "reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation," and "[i]n any ineffectiveness case, a particular decision not to investigate must be directly as-

sessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052.

In the instant case, trial counsel made a strategic decision not to cross-examine Jiminez regarding intoxication which, given the facial content of Jiminez' medical records, is a reasonable professional judgment. Trial counsel has affirmed that he acquired and reviewed Jiminez' medical records prior to trial. (Goldfeder Aff. ¶ 8). These medical records list "<13.0" for "alcohol," without specifying a unit. (Dannelly Aff. Ex. B: Affirm in Resp. to Def's Mot. to Vacate J., 13 ("Ex.B")). This could be interpreted to mean 13.0 milligrams of alcohol per deciliter of blood ("mg/dl"), 0.13 % Blood Alcohol Content ("BAC"), or 13.0 % BAC.[1] A person with blood-alcohol level of 13.0 mg/dl experiences "no influence" or only "mild abnormalities," whereas 0.13 BAC is *prima facie* evidence of driving under while intoxicated, and 13.0 BAC is fatal. *See* Karen Jo Harper, 13–134A Attorney's Textbook of Medicine (3d ed.2008), 134A–3. Before the 440 court, respondent presented the opinion of the medical examiner that the notation "<13.0" represents a "minimal" blood alcohol level,[2] and further argued on appeal that the evidence clearly shows this figure can only be in mg/dl. (Ex. B. at 13; Dannelly Aff. Ex. K: Resp.App. Br., 41)

Petitioner claims that "<13.0" clearly meant "<0.13% BAC" and that his trial counsel should have understood this and questioned the medical examiner accord-

---

1. BAC and mg/dl are alternative measures of the alcohol in a sample of blood. BAC is measured in percent, and mg/dl has units approximately 1000 times smaller. *See e.g.* Karen Jo Harper, 13–134A Attorney's Textbook of Medicine (3d ed.2008) at 134A.84 (0.1 BAC converts to a level of between 100–150 mg/dl).

2. Dr. Barbara Sampson, who testified at trial as an expert on Jiminez' medical records. *See* Ex. B. at 3.

ingly. (Objection at ¶¶ 3–4). The problem is that on its face, "<13.0" does not clearly, or even probably, mean "<0.13% BAC." Not only does petitioner's preferred reading require ignoring the placement of the decimal point, it also begs the question of why hospital staff would have recorded Jiminez' alcohol level as *less than* 0.13%— which as noted, is evidence of substantial, although not overwhelming intoxication— rather than give the precise measurement.

As a facial matter, reading "<13.0" as "<13.0 mg/dl" makes much more sense, as this reading does not require the inference that hospital staff misplaced the decimal point, and makes sense of the use of the less than sign, given that 13 mg/dl indicates a nominal blood-alcohol level. Petitioner does not explain why his trial counsel should have divined that the "<13.0" actually meant "<0.13%." He does not point to any evidence reasonably available to his trial counsel that would have suggested that Jiminez was intoxicated. It seems that neither Petitioner nor any other witness noticed that Jiminiz had been drinking, at least Petitioner has not identified such a witness, and none are apparent from the record. Indeed, Petitioner fails to present any evidence at all to bolster his "<0.13%" theory.

As such, the Court adopts the Report's finding that that the state court's determination that trial counsel competently cross-examined the medical examiner was not unreasonable.

## B. Trial Counsel's "Blunder"

█ Petitioner also objects to the Report's finding that trial counsel's de-

scription of petitioner as "passive," which allowed the State to admit testimony regarding Petitioner's assaults on his girlfriend, did not deprive petitioner of the effective assistance of counsel.[3] Report at 42. The Court hence reviews the issue *de novo*. *Male Juvenile*, 121 F.3d at 38.

There is little dispute that the "passive" comment—which opened the door to specific testimony regarding Petitioner's assaults of Rodriguez—was an error. Trial counsel admitted as much, and Magistrate Judge Peck concluded that it was likely deficient performance under *Strickland's* first prong. Report at 42. While this Court is perhaps more critical of the trial judge's decision to "open the door," the existence of a blunder is not enough under *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052. Petitioner must also show that, but for counsel's error, there was a reasonable probability of a different result, not merely that the error has "some conceivable effect" on the result. *Id.*

As a result of counsel's characterization of petitioner as passive, the trial court allowed the People to present evidence that Petitioner was not passive. At the *Molineaux* hearing, evidence of specific acts of abuse had been excluded, but the court allowed the People to call Jiminez to testify to the fact that Petitioner was abusing Rodriguez, and thus the fact of abuse was before the jury. After counsel's "blunder," the court ruled that Rodriguez could also testify that Petitioner had

---

**3.** Petitioner claims that "Judge Peck failed to comment" on the fact that trial counsel had questioned Rodriguez about the fact that Petitioner had a knife and had stabbed her with it, or the use the State put that information to. (Objection, ¶ 6). These facts may be respectively found at pages six and seven, and page twelve of the Magistrate's report. Comments

thereon may be found at pages forty-two through forty-five of the report. The Court notes that the Report cites that the Prosecutor, not trial counsel, asked Rodriguez regarding the knife and her stabbing, and is minded to credit Judge Peck's careful analysis over counsel's unsupported claim.

struck and stabbed her. The court instructed the jury that evidence of specific acts of abuse was only to be considered to rebut the petitioner's claim that he was passive.[4] The question presented by Petitioner's claim of prejudice is whether the absence of additional details of Petitioner's abuse of Rodriguez, limited as it was by the trial court's proper instruction, would create a reasonable probability of a different result.

Petitioner's theory is that there is a reasonable probability that the jury ignored the Court's instruction, and that the evidence that Llanos had stabbed Rodriguez on other occasions therefore undermined his claim of self-defense. This argument fails primarily because Petitioner has not met his substantial burden of demonstrating that the jury ignored the court's instructions.

Petitioner's claim of prejudice stands or falls on the effectiveness of the limiting instruction given by the trial court to ensure Rodriguez' testimony was only applied to the issues for which it was admissible. *See Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. In the Second Circuit, there is a presumption that juries properly apply the instructions given, unless there exists an "overwhelming probability that the jury will be unable to follow the Court's instructions."[5] *United States v. Snype,* 441 F.3d 119, 129–30 (2d Cir.2006) (internal quotation omitted); *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (holding "juries are presumed to follow instructions" in cases where prejudice can be cured by proper instructions).

The Second Circuit generally finds limiting instructions regarding the application of evidence before the jury to be effective to remedy potential prejudice, even when the material should have been entirely inadmissible.[6] *Id.* (holding that even when co-conspirator's plea allocution was improperly admitted under *Crawford,* a limiting instruction made the error harmless); *Shariff v. Artuz,* 2001 WL 135763, **3–4, 2001 U.S. Dist. LEXIS 1535, *10–*11 (S.D.N.Y. Feb. 14, 2001) (holding proper

---

**4.** Specifically, the court's instruction is as follows:

> We have had some testimony regarding the defendant's alleged assaults against Elizabeth Rodriguez, and in the first instance this was admitted through evidence because there had been a claim during the opening statement that the defendant was a passive person. And this evidence was offered to go to the question of whether he in fact was a passive person and only that.
> But even if you believe that the defendant has had such encounters with Elizabeth Rodriguez on prior occasions that does not tell you what happened on this occasion, which was a totally different one with a totally different person under totally different circumstances.

(Charge: Tr. 845–36).

**5.** Further, the "relevant clearly established federal law," *Strickland, see supra,* holds that:

> [When determining if error is prejudicial,] *a court should presume, absent challenge to*

---

> *the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law ....* The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.

*Strickland,* 466 U.S. at 694–95, 104 S.Ct. 2052 (emphasis added).

**6.** In the instant case, the questioned evidence was admissible for a specific purpose given trial counsel's "blunder." *See* Report at 44. The presumption that juries follow instructions given seems even stronger in such a case than if an instruction is given for the jury to ignore evidence that was not admissible and should not have been before the jury in any form. (*But see* Objection at ¶ 11) (analogizing the error to a witness blurting out that a defendant had committed three unrelated murders). Further, the concept of evidence admissible for some but not other purposes inherently requires the jury to be able to follow instructions.

limiting instruction eliminated any prejudice under *Strickland* when evidence of defendant's prior crimes properly excluded pre-trial was brought before the jury without the permission of the court); *see also United States v. Levy* 142 Fed.Appx. 508, 511 (2d Cir.2005) (holding no showing of prejudice by admission of co-conspirator's other crimes when jury was instructed that evidence was only admitted with respect to co-conspirator).

Petitioner contends that Rodriguez' testimony is "so egregious that no instruction can hope to cure the error," and challenges the presumption that juries follow the instructions they are given. (Objection, ¶ 11). In a habeas petition, the burden of proof is squarely on the petitioner to both show that counsel was unreasonable and that prejudice resulted. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. A bald claim that the jury might not have followed the instructions given is insufficient absent more, and there is no merit to the argument that acts by counsel that affect the course of trial or "might" have some effect on the result are *per se* prejudicial. *Id.* at 693, 104 S.Ct. 2052[7] Further, the Court notes that the questioned evidence is of specific cases of abuse, but no party contends that the fact that Petitioner abused Rodriguez should not be before the jury through the testimony of Jiminez regarding the cause of the altercation. *See* Report at 2–3. While the admission of Rodriguez' testimony may have made Petitioner less sympathetic or opened him up to strong rhetorical arguments, it did not introduce matters entirely excluded absent counsel's "blunder." [8]

In conclusion, the state-court determination that any prejudice could be cured by a limiting instruction, absent any substantial suggestion to the contrary is undoubtedly a reasonable interpretation of the relevant federal law.[9]

## C. Failure to Call Potentially Exculpatory Witnesses

Petitioner also objects to the finding in the Magistrate's Report that it was not objectively unreasonable for the state court to determine that Defendant had valid tactical reasons for choosing not to call two witnesses with possibly exculpatory testimony. (Objection ¶ 13). However, Petitioner's only objection is that "[o]ne wonders how Judge Peck could have come to this conclusion when Sanchez testified at a 440 hearing that he was ready to testify on Petitioner's behalf." (Objection, ¶ 13). This is the archetypical example of a conclusory objection, "argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition, reviewing courts should review a report and recommenda-

---

**7.** Petitioner also contends that this court is obliged to defer to the trial-court "finding" in the *Molineaux* hearing that the material was prejudicial, (Objection at ¶ 9); Even assuming *arguendo* that Petitioner's characterization is correct, the standard applied for prejudice in a *Molineaux* hearing is (properly) not the *Strickland* standard. The on-point state-court determination of prejudice is instead that of the § 440 court when permitting the introduction of previously-excluded material, affirmed on appeal by the First Department. *See People v. Llanos,* 13 A.D.3d at 77, 785 N.Y.S.2d 83.

**8.** Moreover, evidence of Elizabeth Rodriguez' assault might reinforce a claim of self-defense, and hence would be unlikely to prejudice. It is inherently more credible that Jiminez would attack first if given a reason to do so.

**9.** The *Strickland* test does not consider if this Court would reach the same conclusion as the state court, merely if the conclusion is an unreasonable interpretation of the relevant federal law. *See Aparicio,* 269 F.3d at 94. The Court notes that it would likely have reached a similar conclusion if faced with the case.

tion for clear error." *Sanchez v. Dankert*, No. 03 Civ. 2276(LTS), 2004 WL 439502, *1, 2004 U.S. Dist. LEXIS 3716 at *3 (S.D.N.Y. Mar. 9, 2004); *Edwards v. Fischer*, 414 F.Supp.2d 342, 346–47 (S.D.N.Y.2006) (internal quotation marks and citations omitted). Reviewing the Magistrate's report for clear error, none is found.[10]

## D. "Missing" Facts

Petitioner also contends that the Magistrate's report "contains numerous omissions of various facts which would have resulted in a different conclusion if addressed." (Objection, ¶ 2). Petitioner does not specifically set out which facts these are, or why they would compel a different conclusion.[11] The Court presumes that Counsel means to refer to his "facts" paragraph as exclusively containing omitted facts. (Objection, ¶ 3). The Court has carefully reviewed Petitioner's motion and the Report, and finds that most of the allegedly omitted facts are in fact present in the Magistrate's report.

## E. General Objection

Petitioner also makes a general objection to the Magistrate's report with respect to all other claims raised in his Habeas petition. (Objection, ¶ 12). This objection is a "merely perfunctory" response presented in a manner that would "engage the district court in a rehashing of the same arguments set forth in the original petition," producing a reduction

of "the magistrate's work to something akin to a meaningless dress rehearsal." *Vega v. Artuz*, No. 97 Civ. 3775(LTS), 2002 WL 31174466, **1–2, 2002 U.S. Dist. LEXIS 18270 at *2–*3 (S.D.N.Y. Sept. 30, 2002) (quotation omitted). As such, this objection warrants "clear error" review of the Magistrate's report. *See Sanchez*, 2004 WL 439502, *1, 2004 U.S. Dist. LEXIS 3716 at *3. The Court finds no clear error in any part of Magistrate Peck's careful and detailed report, and concludes for the reasons described in the report that the Petitioner has not shown the determination of the Appellate Division with respect to Llanos' claims to be contrary to or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d).

## CONCLUSION

For the reasons stated above, the Court ADOPTS the Reports of Magistrate Judge Andrew J. Peck in their entirety. The petition for a writ of habeas corpus is DENIED. In addition, the Court DECLINES to issue a certificate of appealability. The petitioner has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See Tankleff v. Senkowski*, 135 F.3d 235, 241–42 (2d Cir.1998). SO ORDERED.

---

**10.** Magistrate Peck clearly sets out the justification for this finding; were the Court to review it *de novo*, the same result would be reached for the reasons given in the Report. Report at 18–23. The State Court finding in the § 440 hearing that the two witnesses were not produced for valid strategic reasons is not objectively unreasonable, (Dannelly Aff. Ex. E: 7/25/02 Atlas decision, 3–8), namely that one witness offered testimony that would have been inconsistent and harmful, (*Id.* at 3–

4), and that the other presented an affidavit that was "a fraud" containing "unbelievable" explanations of the events in question. (*Id.* at 7–8).

**11.** Petitioner also fails to cite to where these "facts" are established in the record. The Court gives Petitioner's counsel the benefit of the doubt and refers counsel to the Magistrate's careful citation to the record.