Filed 8/20/24  In re Gilberto G. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re GILBERTO G. et al., Persons Coming Under the Juvenile Court Law. | B332002 <br><br> (Los Angeles County Super. Ct. No. 17CCJP01972) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ELIZABETH T., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lucia J. Murillo, Juvenile Court Referee.  Reversed.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly G. Emling, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Elizabeth T. made a mistake.  She had too many beers and injured her leg when she fell on a bus while she was taking her three children to see their father.  One thing led to another, the Los Angeles County Department of Children and Family Services became involved, and the juvenile court ultimately sustained a petition under Welfare and Institutions Code section 300, subdivision (b), and placed the family under the supervision of a social worker pursuant to section 360, subdivision (b).

Elizabeth T. appeals from the juvenile court's jurisdiction findings and disposition orders.  She argues one incident of alcohol abuse while she was caring for her three children did not support the court's finding she posed a risk of danger to her children at the time of the jurisdiction hearing.  We conclude that the evidence of this incident, along with a four-year-old sustained allegation of substance abuse of which there is no evidence in the record, did not support the court's finding Elizabeth's conduct created a substantial risk of serious physical harm or illness.  Therefore, we reverse the court's jurisdiction findings and disposition orders.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Elizabeth Falls on a Bus, and the Department Files a Petition Under Section 300*

On February 19, 2023 Elizabeth had lunch at her father-in-law's home with her children, Gilberto Jr. (10), George (eight), and Hector (six). Elizabeth said she drank two beers at lunch. At the time, Elizabeth had a "cast boot" on her left foot, which she broke playing soccer, and used crutches.

After lunch Elizabeth and the children boarded a public bus to go visit the children's father, Gilberto. After the children were seated, but while Elizabeth was still standing, the bus "jerked" and Elizabeth fell. An ambulance transported Elizabeth to an emergency room, where she called Gilberto to pick up the children. The children left with Gilberto, and the hospital released Elizabeth after treating her for minor injuries. The treating physician noted Elizabeth was "[a]lert," in "mild distress," "oriented to person, place, time, and situation," "cooperative," and used "normal speech." The physician also noted Elizabeth reported she fell on the bus when the bus driver stopped abruptly.

An anonymous caller contacted the Department from the emergency room and stated Elizabeth fell on the bus "due to being intoxicated" and appeared at the hospital to be "heavily intoxicated," "unable to stand on her own," and belligerent. The caller stated that another person in the emergency room said the hospital should not allow Elizabeth to leave with her children and that "someone" should call the Department. The caller reported the children were dirty, disheveled, and "extremely hungry." The caller also stated that Elizabeth's toxicology screen

was positive for marijuana and that her blood alcohol level was "220."[1]

A Department social worker interviewed Elizabeth and her children. Elizabeth denied that she had been heavily intoxicated at the hospital or that she had an alcohol or drug problem. She claimed not to know why her toxicology test was positive for marijuana or registered so high for alcohol. Elizabeth also stated that her children were not dirty or disheveled and that, if they were hungry, it was because they were at the hospital for a long time. She also said that she was belligerent because she was in pain and that the nurses were "rude" and not paying attention to her. The social worker reported Elizabeth was well groomed, alert, and not slurring her words during the interview.

Elizabeth admitted the family had previously been involved with the Department because she and Gilberto had a history of domestic violence. But she said that she learned a lot from her domestic violence classes and that she and Gilberto now co-parented the children successfully. Elizabeth said that she was still married to Gilberto, but that she did not live with him and that she had legal and physical custody of the children.

The social worker also interviewed the children, all of whom were alert, smiling, well groomed, dressed appropriately,

---

[1] According to Elizabeth's medical records, her "Ethanol level" was 220 mg/dL, which the records identify as "acute alcohol intoxication." At the jurisdiction and disposition hearing counsel for the Department stated Elizabeth's reading was equivalent to a blood alcohol content of .22 percent. (See *Llanos v. Goord* (S.D.N.Y. 2008) 555 F.Supp.2d 454, 458, fn. 1 ["BAC and mg/dl are alternative measures of the alcohol in a sample of blood. BAC is measured in percent, and mg/dl has units approximately 1000 times smaller."].)

4

and showed no signs of abuse or neglect. Gilberto Jr. said that Elizabeth drank beer at lunch before the bus incident, but that she was not yelling or rude to anyone at the hospital. He said that Elizabeth could stand on her own and that he and his brothers were hungry at the hospital because they had lunch earlier in the day. Gilberto Jr. said that his mother "drinks in the weekends at home," but that he had not seen Elizabeth "falling or stumbling" or acting "weird." He said that Elizabeth did not use drugs at home and that she told him it was "not okay to do drugs [or] alcohol." Gilberto Jr. also said that he had been to the doctor and dentist five months earlier, that his house had plenty of food, that he was never left alone at home, that his parents got along well, and that he showered every two days on his own. George and Hector confirmed that Elizabeth drank a bottle of beer at lunch with their grandfather before she fell on the bus, but that they had not seen their mother stumbling or acting "weird" that day or any other time. George and Hector said that they felt safe with Elizabeth, that there was plenty of food at home, that they were never left without an adult, and that they bathed regularly.

The Department also interviewed Gilberto, who said Elizabeth was not intoxicated or "high" when he picked up the children from the hospital. He said Elizabeth told him she fell because the bus driver moved the bus before she was able to sit down. Gilberto was at work when Elizabeth and the children had lunch with Gilberto's father, and he was not aware she had any alcohol or marijuana that day. Gilberto said that he had never seen Elizabeth drunk while caring for the children and that he did not believe she had a problem with alcohol or drugs.

Elizabeth's mother told the social worker that she had no concerns about Elizabeth's care of the children. She said that Elizabeth had "come a long way" since the Department's previous involvement with the family and that Elizabeth and Gilberto now had "good interactions with each other." She also said Elizabeth did not have a problem with alcohol or drugs. Elizabeth's mother said she visited Elizabeth and the children weekly and babysat for them. She stated that Elizabeth never left the children at home alone and that the house was clean and had plenty of food. She said she was not aware the children had any medical or developmental issues.

On March 3, 2023 Elizabeth voluntarily tested for drugs and alcohol, and the test was negative. Ten days later a case social worker asked Elizabeth if she would test again, and Elizabeth said she had fully cooperated with the Department's request. Elizabeth later told the Department she was willing to complete court-ordered services to keep her children in her care "and for the betterment of [her] family."

In April 2023 a case social worker conducted a home assessment and reported Elizabeth's home was tidy and had plenty of food. The social worker did not see any alcohol bottles, drugs, or safety hazards in the home. On the same day as the home assessment, a supervising case social worker called Elizabeth at Elizabeth's request. Gilberto joined the conversation, and he and Elizabeth asked questions about the "open ER investigation." After the conversation, the supervising case social worker called the case social worker and recommended she call the police to request a welfare check for the children because Elizabeth and Gilberto were "argumentative, combative" and "appeared to have slurred and

rapid speech." A Los Angeles Police Department officer later told the case social worker that officers "were not able to enter [Elizabeth's] building and did not make any contact/entry to conduct [a] welfare check."

At an unannounced school visit in April 2023 the children appeared "alert, friendly, smiling," "well groomed," and "not under any distress." Hector told the case social worker "in regards to [Elizabeth] drinking beer" that he saw her drink from a "'black bottle with a dragon and a shield.'" All three children denied seeing Elizabeth drunk, falling down, or "acting strange at home."

The Department's investigation revealed no criminal history for Elizabeth, but as she admitted, the family had a prior history with the Department. In January 2018 the juvenile court sustained a petition under section 300, subdivisions (a) and (b), alleging Elizabeth and Gilberto had a history of domestic violence that endangered the children's physical health and safety and placed the children at risk of serious physical harm, damage, and danger. An unsustained allegation stated Elizabeth had a history of substance abuse, was a current user of marijuana, and had a positive toxicology screen for marijuana in October 2017. In connection with that case, the court ordered Elizabeth to submit to counseling, drug testing, and other services, and the Department reported Elizabeth was "compliant" with her case plan.

On May 2, 2023 the Department filed the petition in this case on behalf of Gilberto Jr., George, and Hector, alleging under section 300 the children had suffered, or there was a substantial risk they would suffer, serious physical harm or illness. Although the Department checked the boxes on the form petition

7

for section 300, subdivisions (b)(1)(A) and (b)(1)(D),[2] the petition included a single allegation that blended the elements of each subdivision. In relevant part, the petition alleged Elizabeth "has a history of substance abuse and is a current abuser of marijuana and alcohol, which renders [her] incapable of providing regular care and supervision of the children. On 02/19/2023, [Elizabeth] had a positive toxicology screen for marijuana and alcohol. On 02/19/2023, [Elizabeth] was under the influence of marijuana and alcohol while the children were in [her] care and supervision. The child Hector is of such young age requiring constant care and supervision and the mother's substance abuse interferes with providing regular care and supervision of the child. The children are prior dependents of the Juvenile Court due to the mother's substance abuse. . . . The mother's substance abuse . . . endangers the children's physical health and safety, and places the children at risk of serious physical harm, damage, danger, and failure to protect." The Department recommended against detaining the children.

### B. *The Department Continues To Investigate*

In June 2023 a case social worker interviewed the family again (except Hector, who was napping). Regarding the bus incident, Elizabeth said that she had "two Mickeys" at lunch and drank wine the night before, but that she was "not hungover or drunk." She said that at the hospital she yelled at her children to stop running around the emergency room and that "some lady in the ER saw me yelling and said that they should call DCFS on

---

[2] The petition included an allegation against Gilberto under section 300, subdivision (b)(1)(B), which is not at issue in this appeal.

me and that I shouldn't have my kids." Elizabeth said she told the woman to ""mind [her] fucking business"" because Elizabeth was feeling "grumpy" and "in pain." She admitted she drank socially and smoked "a blunt once a week at most" when the children were asleep or Gilberto was there. Elizabeth stated that she has an "active family" and that she does not "have time to be drunk" because she is "always taking [her] kids places or [she] is at work."

Elizabeth said she was willing to submit to drug and alcohol testing and had looked for anger management classes. She asked if the Department would pay for those services and said, "'I will complete them; I just need help paying for them.'" Elizabeth stated: "'[W]hen they started investigating me they said I have a bad attitude and that I refused to test,'" but "'I don't want to go through all this again, I have been through this already.'" Elizabeth was also agreeable to voluntary supervision under section 301, but the case social worker stated she was "unsure" whether Elizabeth would voluntarily complete any services because Elizabeth "fail[ed] to comply with services during one of her previous cases." (As stated, the Department previously reported Elizabeth complied with the case plan in her 2018 case.)

Gilberto Jr. and George again appeared clean, well groomed, and appropriately dressed. The social worker again asked Gilberto Jr. about the bus incident, and Gilberto said he "'ate shrimp and drank juice'" at his grandfather's house that day. He said Elizabeth also drank juice. George said that Elizabeth typically drinks only cranberry or pineapple juice and that, though he did not know what drugs and alcohol were, his mother did not use them. The Department reported that the

children displayed no developmental or intellectual delays and that Elizabeth said the children were excelling academically and had no behavioral problems at school.

On June 27, 2023 a case social worker again asked Elizabeth if she was willing to submit to a drug and alcohol test. Elizabeth said she could not test that day because of her work schedule, and the case social worker asked if she could test the next day. Elizabeth said she had to take the children to the dentist and go to work that day, but she could test on a different day.

The Department's jurisdiction and disposition report stated Elizabeth "continues to deny she has any issues with alcohol or drugs" and "denies she was inebriated and fell on the bus partly due to her alcohol and marijuana use." The Department stated it would continue to assess whether to recommend dismissal under section 301, but expressed concerns about Elizabeth's willingness to participate in services voluntarily. The report stated Elizabeth "declined mental health intakes for the children" and declined to submit to drug and alcohol testing on June 27 and 28, 2023.

In August 2023 a Department committee considered whether to recommend dismissing the petition under section 301. Elizabeth claims the committee did not interview her. The committee found Elizabeth's "refusal to voluntarily provide further alcohol and drug tests . . . showed [she] was not cooperative" and recommended against dismissal. A last minute information report stated that Elizabeth provided the Department an enrollment letter for an anger management class, but that the Department had not been able to verify that information before the jurisdiction and disposition hearing.

10

C. *The Juvenile Court Sustains the Petition*

At the August 22, 2023 jurisdiction and disposition hearing counsel for Elizabeth asked the juvenile court to dismiss the petition because there was "no current risk" to the children. Counsel for Elizabeth argued there was no evidence Elizabeth was "intoxicated to the point where she could not supervise her children," though she admittedly had "an unpleasant interaction" with someone in the emergency room. Counsel for Elizabeth also argued that repeated home assessments and interviews showed Elizabeth's home was neat, comfortable, and safe and that throughout the six-month investigation the Department had not identified any risks to the children. Even if Elizabeth was heavily intoxicated at the hospital, counsel for Elizabeth argued, it was a "one-time incident," and there was no evidence of a history of substance abuse. Counsel for Elizabeth also pointed out that Elizabeth voluntarily tested after the bus incident and that the prior dependency case arose from domestic violence, not substance abuse.

Counsel for the Department argued Elizabeth's blood alcohol content at the hospital was .22 percent, "which is more than double the legal limit." Counsel for the Department argued that Elizabeth's claim she drank only two beers was inconsistent with the evidence of her blood alcohol content and that "she was unable to stand on her own" at the hospital, "let alone care for her children, so this is the current risk today." Counsel for the Department also argued Elizabeth "refused to test for the Department further," which was "current evidence" of risk. Finally, apparently referring to a December 2018 sustained allegation of substance abuse in a supplemental petition under section 387 (not the January 2018 unsustained allegation of

11

substance abuse under section 300), counsel stated: "The 2018 petition, the [section] 387 petition of December 11, 2018, and what was sustained by the court, indicates [Elizabeth] had a hospital tox screen for marijuana and alcohol. On prior occasions [Elizabeth] was under the influence of marijuana and alcohol while caring for the children. It was sustained as to [Elizabeth and Gilberto], the S1 allegation."[3]

The juvenile court sustained the petition. The court stated: "Were we looking at this case as it occurred in February, I would be dismissing the petition; however, when I look at it in the context of the prior case, the 387 with sustained allegations, I have to conclude maybe this was a bad day. It's not illegal to drink alcohol, not illegal to consume marijuana, however, one has to do so, when one has children, responsibly and not while they are under your care and supervision." The court ordered informal supervision under section 360, subdivision (b). Elizabeth timely appealed.

## DISCUSSION

A.    *Applicable Law and Standard of Review*

Section 300, subdivision (b)(1), provides the juvenile court may declare a child a dependent child of the court when "[t]he child has suffered, or there is a substantial risk that the child will

---

[3]    Although the record is unclear, counsel's citation to an "S1 allegation" appears to refer to the first (or only) allegation in a supplemental petition under section 387 sustained in December 2018. The Department's jurisdiction and disposition report in this case did not mention this supplemental petition or a sustained finding of substance abuse.

12

suffer, serious physical harm or illness, as a result of . . . [¶] (A) [t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child" or "(D) [t]he inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's . . . substance abuse."  "Thus, to obtain a jurisdictional determination under section 300, subdivision (b)(1), an agency must 'prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness.'" (*In re S.F.* (2023) 91 Cal.App.5th 696, 712; see *In re Cole L.* (2021) 70 Cal.App.5th 591, 601.)  For jurisdiction under section 300, subdivision (b)(1)(D), the child protective agency must prove that substance abuse makes the parent or guardian unable to provide regular care for a child and that this inability caused the child to suffer serious physical harm or illness or creates a substantial risk of such harm or illness.  (*In re N.R.* (2023) 15 Cal.5th 520, 558; see *In re B.D.* (2024) 103 Cal.App.5th 315, 324.)

Section 300 requires proof a child is subject to the defined risk of harm at the time of the jurisdiction hearing.  (*In re M.D.* (2023) 93 Cal.App.5th 836, 848-849; *In re D.L.* (2018) 22 Cal.App.5th 1142, 1146.)  But the "court 'need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child.'  [Citation.]  And a parent's ""[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue.'"  [Citation.]  However, "'[t]o establish a defined risk of harm at the time of the hearing, there 'must be some reason beyond mere speculation to believe the alleged conduct will recur.'"""

13

(*In re S.F.*, *supra*, 91 Cal.App.5th at pp. 712-713; see *In re J.A.*
(2020) 47 Cal.App.5th 1036, 1048.)

"'We review the jurisdictional findings for substantial
evidence.  [Citation.]  We consider the entire record, drawing all
reasonable inferences in support of the juvenile court's findings
and affirming the order even if other evidence supports a
different finding.'" (*In re L.B.* (2023) 88 Cal.App.5th 402, 411-
412; see *In re S.F.*, *supra*, 91 Cal.App.5th at p. 713.)  Substantial
evidence, however, is not synonymous with any evidence.  (*In re
B.D.*, *supra*, 103 Cal.App.5th at p. 323; *In re J.A.*, *supra*,
47 Cal.App.5th at p. 1046.)  "A decision supported by a mere
scintilla of evidence need not be affirmed on appeal.  [Citation.]
Furthermore, [w]hile substantial evidence may consist of
inferences, such inferences must be a product of logic and reason
and must rest on the evidence [citation]; *inferences that are the
result of mere speculation or conjecture cannot support a finding*
[citations].  [Citation.]  The ultimate test is whether it is
reasonable for a trier of fact to make the ruling in question in
light of the whole record." (*B.D.*, at p. 324, internal quotation
marks omitted; see *J.A.*, at p. 1046.)  "'We do not consider the
credibility of witnesses or reweigh the evidence.'" (*L.B.*, at p. 412;
see *S.F.*, at p. 713.)

B.     *Substantial Evidence Did Not Support Jurisdiction
        Under Section 300, Subdivision (b)(1)(A)*

Elizabeth admits she was under the influence of alcohol
and marijuana while riding a public bus with her children, but
she argues that single episode was not sufficient to bring the
children within the juvenile court's jurisdiction.  She also argues
that there was no evidence her children suffered any harm and

14

that, at the time of the jurisdiction hearing six months after the bus incident, there was no evidence the children were at risk of suffering serious physical harm or illness.

Elizabeth relies on *In re J.N.* (2010) 181 Cal.App.4th 1010 (*J.N.*), where the court held: "In evaluating risk based upon a single episode of endangering conduct, a juvenile court should consider the nature of the conduct and all surrounding circumstances. It should also consider the present circumstances, which might include, among other things, evidence of the parent's current understanding of and attitude toward the past conduct that endangered a child, or participation in educational programs, or other steps taken, by the parent to address the problematic conduct in the interim . . . . The nature and circumstances of a single incident of harmful or potentially harmful conduct may be sufficient, in a particular case, to establish current risk depending upon present circumstances." (*Id.* at pp. 1025-1026.) Elizabeth argues that, in light of all the circumstances, her single incident of intoxication while caring for her children did not harm the children or create a future risk of harm.

Let's dig in to that case. In *J.N.* an intoxicated father got into a car accident and then drove into a light pole while trying to flee the scene, injuring his eight-year-old and 14-month-old children. (*J.N.*, *supra*, 181 Cal.App.4th at pp. 1014-1015, 1017.) A four-year-old child and the children's mother, who was also intoxicated, were not injured. (*Id.* at p. 1017.) Police officers reported both parents yelled at the scene, slurred their speech, and smelled of alcohol. (*Id.* at p. 1016.) A child protective agency filed a petition against the parents, who had no prior child protective services referrals, and alleged counts under

15

section 300, subdivision (b)(1)(A) and (b)(1)(D).[4]  (*J.N.*, at pp. 1014-1015, 1019.)  During the agency's investigation, eight-year-old J.N. told investigators his parents drank beer occasionally at home.  (*Id.* at p. 1017.)  The mother admitted that she made a "'bad decision'" the night of the accident and that "it would not happen again."  (*Ibid.*)  The father was also "cooperative and remorseful," and both parents were "willing to change."  (*Id.* at pp. 1018-1019.)  The agency reported "the children [were] healthy, well adjusted, well behaved and bonded with each other, and developing normally."  (*Id.* at p. 1019.)

In reversing the juvenile court's jurisdiction findings, the court in *J.N.* stated, "Despite the profound seriousness of the parents' endangering conduct on the one occasion in this case, there was no evidence from which to infer there is a substantial risk such behavior will recur."  (*J.N.*, *supra*, 181 Cal.App.4th at p. 1026.)  The court stated that the juvenile court in that case had not found the parents were "substance abusers" and that the "evidence as a whole did not even establish that mother or father consumed alcohol on a regular basis."  (*Ibid.*)  The court also concluded "there was no evidence, and there were no factual allegations, that either parent's parenting skills, general judgment, or understanding of the risks of inappropriate alcohol use [was] so materially deficient that the parent [was] unable 'to adequately supervise or protect' the children.  The evidence consistently indicated that the children were healthy, well adjusted, well cared for, bonded with each other, and developing

---

[4]  The petition also alleged under section 300, subdivision (g), the children's parents were incarcerated (for child endangerment) and could not arrange for the care of the children.  (*J.N.*, *supra*, 181 Cal.App.4th at p. 1014.)

16

appropriately. . . . Significantly, both parents were remorseful, loving, and indicated that they were willing to learn from their mistakes." (*Ibid.*) The court also stated that, at the time of the jurisdiction and disposition hearing, "the criminal court had ordered mother to complete substance abuse and parenting programs and placed her under probation supervision." (*Ibid.*)

This case is like *J.N.* in some ways. The Department alleged a single incident of intoxication while caring for the children. The investigation revealed Elizabeth, like the parents in *J.N.*, occasionally drank alcohol at home. Elizabeth cooperated with the Department's investigation, submitted to drug and alcohol testing on one occasion and agreed to test again,[5] and provided evidence she attended an anger management class.[6] Finally, by all accounts, Elizabeth's children are thriving, are healthy, and have no developmental delays. The Department

---

[5] The Department repeatedly claimed in its reports, and repeatedly asserts in its respondent's brief, Elizabeth "refused to test." That's just not true. Elizabeth voluntarily tested on one occasion, declined to test on other occasions when she had work and childcare conflicts, and agreed to test (just "not this week") and participate in court-ordered services. While "[c]ommon sense suggests that a parent who consistently refuses to drug test without an adequate explanation does so because he or she knows the results will show substance abuse" (*In re E.A.* (2018) 24 Cal.App.5th 648, 657, fn. 6), that rule does not apply here.

[6] The Department's August 22, 2023 last minute information report stated Elizabeth provided the Department an "enrollment letter" including a "sign in sheet," which the Department attached to the last minute information. The attachment, however, is not in the record.

characterized the family as "well bonded" and "emotionally attached."

This case is unlike *J.N.* in other ways, with some of the differences mitigating and some aggravating. Most important among the mitigating differences is that the single incident of intoxication in this case did not result in harm to the children, and there is no evidence they were at risk of serious physical harm while riding the bus with their mother to meet their father. Although counsel for the Department argued Elizabeth's blood alcohol content was "double the legal limit," that legal limit is for driving, and Elizabeth did not drive a car while intoxicated.

Another mitigating difference is that six months elapsed in this case between the date of the bus incident and the jurisdiction and disposition hearing. During that time there is no evidence of any other incident where Elizabeth was intoxicated or under the influence of marijuana while caring for the children. In contrast, the jurisdiction hearing in *J.N.* occurred only two months after the single incident, and the court in *J.N.* still held there was no evidence of any "current risk" to the children. (*J.N.*, *supra*, 181 Cal.App.4th at pp. 1023, 1026.)

The primary aggravating difference is the claim in this case, absent in *J.N.*, of a sustained allegation from a prior supplemental petition based on substance abuse. But because that petition is not in the record on appeal, what little we know about it comes, not from any evidence, but from the argument by counsel for the Department at the jurisdiction and disposition hearing.[7] (See *In re D.P.* (2023) 14 Cal.5th 266, 281 [statements

---

[7] The juvenile court took judicial notice of the children's case files, which may have included the 2018 supplemental petition.

18

by counsel are not evidence].) For example, we do not know when the alleged "tox screen for marijuana and alcohol" was administered or the timing or circumstances in which Elizabeth was under the influence of marijuana and alcohol "while caring for the children." The record does include references to an inconclusive referral alleging Elizabeth had hospital toxicology screens in 2014 that were positive for marijuana and to an unsustained allegation from 2017 that Elizabeth tested positive for marijuana "while the children were in the father's care and supervision." It is unclear whether these are the same toxicology screens counsel for the Department referred to in describing the December 2018 sustained allegation. We do not really know (because there is no evidence of it in this record) whether there even was a sustained allegation of substance abuse against Elizabeth in December 2018. But even if the juvenile court did sustain such an allegation in December 2018, there was no evidence Elizabeth regularly drank excessive amounts of alcohol or used marijuana while caring for the children five years later at the time of the jurisdiction hearing or the recent past. Moreover, since the alleged incidents in 2014 and 2017, Elizabeth complied with the case plan in her prior case, which included "10 random or on-demand test[s]."

Another aggravating difference is Elizabeth's relative minimization of the bus incident. Unlike the parents in *J.N.*, Elizabeth never acknowledged she drank too much before

_____

Elizabeth argues the Department presented no evidence of a section 387 petition that was sustained in 2018, but she did not object at the jurisdiction hearing to the admissibility of the 2018 petition and she does not argue on appeal the juvenile court abused its discretion in considering the 2018 petition.

19

boarding the bus with her children; she admitted only she had two beers at lunch and a glass of wine the night before. Elizabeth appears to have downplayed her poor judgment to avoid the Department becoming involved again with her family. Although Elizabeth failed to take full responsibility for her actions, she cooperated with the Department's investigation, voluntarily submitted to a drug and alcohol test, and agreed to test in the future and to participate in other services, so long as the Department paid for them. In cases where courts have inferred a current risk of harm from a parent's failure to take responsibility for past actions, there are typically other concerning factors, such as a parent's failure to enroll in services the parent agreed to in a safety plan (*In re K.B.* (2021) 59 Cal.App.5th 593, 602), resistance to the Department's investigation (*In re E.E.* (2020) 49 Cal.App.5th 195, 213), or an increasing resistance to accepting responsibility over time (see *In re M.R.* (2017) 8 Cal.App.5th 101, 109 ["parents' acceptance of responsibility seemed to worsen, rather than improve, as dependency proceedings progressed," suggesting the juvenile court "could justifiably conclude there remained a risk to the children if and when the parents' alcohol use resumed such that informal supervision was warranted to help mitigate that risk"]). None of those factors is present here.

On the whole, the aggravating differences do not sufficiently distinguish this case from *J.N.*, and as discussed, Elizabeth's conduct was not as egregious as the parents' conduct in *J.N.* Substantial evidence did not demonstrate a substantial risk Elizabeth's failure or inability to supervise or protect her children adequately would recur and cause serious physical harm or illness to her children. (See *J.N.*, *supra*, 181 Cal.App.4th at

20

p. 1026; see also *In re B.D.*, *supra*, 103 Cal.App.5th at p. 331 [child protective agency must "'present evidence of a specific, nonspeculative and substantial risk . . . of serious physical harm' to the children"].)

C.    *Substantial Evidence Did Not Support Jurisdiction Under Section 300, Subdivision (b)(1)(D)*

Although the parties do not specifically address jurisdiction under section 300, subdivision (b)(1)(D), Elizabeth argues there was no evidence she currently abuses marijuana or alcohol, a requirement for jurisdiction under that provision. (See *In re N.R.*, *supra*, 15 Cal.5th at p. 558; *In re B.D.*, *supra*, 103 Cal.App.5th at p. 330.) Indeed, though Elizabeth admits she drank alcohol and used marijuana occasionally, she appeared alert during her interviews, her children said she did not act "weird" or drink alcohol in their presence, her husband and mother said she did not abuse alcohol or marijuana, and during the Department's six-month investigation there were no other incidents like the one on the bus. Although the juvenile court sustained a petition based on substance abuse in 2018, the circumstances of that allegation are unknown, and Elizabeth complied with the case plan, which included alcohol and drug testing.

But even if the evidence had established Elizabeth had a substance abuse issue, "it is inappropriate to regard a parent's or guardian's excessive use of alcohol or an addictive drug as always being sufficient, by itself, to show that the parent or guardian is unable to provide regular care for a young child and that the child is therefore at substantial risk of serious physical harm." (*In re N.R.*, *supra*, 15 Cal.5th at pp. 558-559.) Instead, the

21

Department had to establish Elizabeth was unable "to provide regular care" for her children because of her substance abuse. (*Id.* at p. 559; see *In re B.D.*, *supra*, 103 Cal.App.5th at p. 325.) There was no evidence Elizabeth was unable to care for her children; to the contrary, the evidence showed she ably cared for her children, who were healthy, developmentally on target, and showed no signs of abuse or neglect.  Substantial evidence did not support jurisdiction findings under section 300, subdivision (b)(1)(D).

## DISPOSITION

The juvenile court's jurisdiction findings under section 300, subdivision (b), and disposition orders are reversed.


SEGAL, J.


We concur:


MARTINEZ, P. J.


STONE, J.


22